Action to recover damages for personal injury, on the ground of negligence.
The defendant denies that it was negligent and, among other (326) things, alleges that the plaintiff's injuries were caused by his own negligence and want of due care in attempting to drive across defendant's railroad at its crossing, without looking or listening for defendant's approaching train, as it was his duty to do for his own safety. The defendant says that the plaintiff did not look or listen for *Page 266 
the approach of defendant's engine or train, as it was his duty, under the circumstances, to do, and that he could, had he looked and listened, have seen and heard the approach of defendant's engine in time to have placed himself out of danger; in fact, the defendant alleges that it did blow its whistle at the usual place for blowing for said crossing, about three hundred yards from said crossing, while approaching the same, and that the plaintiff, as well as other persons, heard the same, and instead of remaining in a place of safety until after defendant's engine would pass said crossing, as it was his duty to do, he carelessly, recklessly and negligently, without due care for his own safety, violently whipped his horse, driving him and the buggy drawn by said horse across defendant's railroad track in front of defendant's approaching engine to a place of safety beyond, after which he recklessly and carelessly so drove said horse that said buggy in which the plaintiff was driving, at a distance of about thirty-six feet from the defendant's said railway and crossing, struck a post, injuring said buggy and throwing the plaintiff therefrom, injuring the plaintiff thereby, without any fault or negligence on the part of the defendant or its employees who were running said engine very slowly, not exceeding twelve miles an hour, its engineer and fireman all the while fully complying with their duty by keeping a constant lookout ahead, and who did, as soon as the plaintiff approached said railroad track or crossing near enough to become dangerous, apply the emergency brake and all other appliances at hand and stopped said engine before reaching said crossing, or just as it reached the same, without striking said horse and buggy of the plaintiff or the plaintiff himself. Had the plaintiff looked or listened before attempting to drive across said crossing, as it was his duty to do, he could have seen and heard said east-bound engine in ample time to have avoided the accident, but in total disregard of his own (327) duty, he carelessly and negligently attempted to drive his horse and buggy across defendant's railroad at said crossing, and in doing so struck his horse violently with the whip, thereby frightening him and causing him to run against the said post, injuring the plaintiff, if he was injured at all.
The plaintiff introduced a rule of the defendant which reads: "Passenger trains in the same direction must keep at least ten minutes apart; freight trains fifteen minutes apart, except when closing up at stations or at meeting or crossing points, except where block signals are used."
The following is the statement of facts and the evidence taken from the brief of the plaintiff:
The defendants admit that on the 6th day of September, 1909, the plaintiff was injured in attempting to cross its track with his buggy; *Page 267 
that plaintiff's horse became frightened by an approaching train and plaintiff was thrown out against a post and injured.
The plaintiff testified in his own behalf that on 6 September, 1909, he was going towards Canton, and had just passed a little branch, and a freight train hove in sight coming from Canton; that he drove on, his mare in a slow trot, kind of cantering along; he did not see anything to stop for, as the train had just passed. He thought everything was clear, and when he got to the railroad crossing Hall, the man in the buggy with him, said, "There is another train coming up there," and plaintiff said, "It is that train down there," and Hall jumped out of the buggy right at the track and said, "Whip up your mare, or you will be caught," and plaintiff turned his head and looked up the track and the train was about forty or sixty feet from him, coming backwards down the track, and he struck his mare and the smoke and steam coming out scared the mare and she threw him against the sign post and injured him. Just before coming to the crossing where he was injured he saw a freight train go beyond the crossing 150 yards and stop, and this led him to believe there was nothing else behind — he was pretty close to the railroad and did not hurry — let his mare go, did not hurry her, but just as he got to the track the man that was in the buggy with him (had not quite got to the track, maybe sixteen or seventeen feet from it) said, "I believe I hear another train." Plaintiff did not stop, and he jumped out of the buggy at the (328) railroad, and when he jumped out and said, "Whip up your mare, or you'll get caught," plaintiff turned his head and saw the train was coming two or three rail lengths from him, and whipped his mare, and just then the steam came out, causing the mare to shy to the left.
Between the little branch and the crossing is over 100 yards; it is 150 to the place; it would take two or three minutes to go from the little branch to the crossing; could walk it in two or three minutes or less time — "it was just all right now." Plaintiff could see nothing till he got on the track; when right at the railroad could not see 150 feet; could see about two or three rail lengths. No top on the buggy; it was open; no curtains. The embankment at the crossing comes right down to it. Just before getting to the railroad, that hill makes off and makes a kind of bend.
Hall testified: "We crossed the branch, and after we crossed it, there was a freight train coming down from Canton, and after coming on past us it stopped over the trestle, and we drove on to the next crossing, and there was a very high bank there that you can't see up the railroad any, and just before we got to the crossing I thought I heard a train blow, and said, `I believe there is a train coming,' and as I said that I put my hand on the side of the buggy and jumped, and when I turned *Page 268 
my face his mare's foot was on the track and buggy very close, and I hollered to him to whip the mare, and he crossed the track, and I saw he was going to hit the sign-post, and I saw him hit the sign-post and make a somersault. The distance from the little branch to the railroad crossing is 148 yards. I walked it in 1 3/4 minutes."
Thomas Wright testified that he was within 150 or 175 yards of plaintiff when the accident occurred; that he did not hear any bell ring or whistle blow; thought he could have heard.
There was a judgment of nonsuit, from which the plaintiff appealed.
It is true, as contended by the learned counsel for the plaintiff, that the defendant must plead contributory negligence, and that the plea is not good when it does no more than deny the negligence of the defendant and allege that the plaintiff was injured by his own negligence. Rev., 483;Cogdell v. R. R., 132 N.C. 855.
The defendant, as appears from the answer, has done more than this, and we think it is entitled to avail itself of the defense. It has alleged that the plaintiff entered upon the track of the defendant without looking and listening, and that he recklessly attempted to cross the track in front of an approaching train.
We also concur in the interesting and able discussion of the relative functions of the judge and jury, and of the importance of preventing encroachment by one on the powers of the other, but we must recognize the principle, firmly established, that the judge must decide, as matter of law, the preliminary question whether there is any legal evidence to be submitted to the jury. In the determination of this question, caution should be observed and the construction of the evidence most favorable to the plaintiff should be adopted.
Considering the evidence in this light, we must sustain the ruling of the judge, as it appears clear to us that the plaintiff was guilty of contributory negligence on his own evidence.
There was much controversy at one time as to the right of the defendant to avail itself of the plea of contributory negligence on a motion to nonsuit, but it is now the accepted doctrine with us that it can do so if it is disclosed by the evidence of the plaintiff. If the plaintiff entered on the track without looking and listening, or if he looked and listened and attempted to drive in front of the train, in either case he would be guilty of contributory negligence.
He says that when he was sixteen or seventeen feet from the track, *Page 269 
Hall, who was in the buggy with him, told him he heard another train, and jumped out and told him to whip up or he would be caught; that he turned and saw the train, two or three rail lengths from him, and that he whipped his mare to force her across.
It is true he was not injured on the crossing, but he would not (330) have been injured at all if he had not negligently placed himself in a position of danger.
The citation of authority is needless, as there is no controversy between the plaintiff and the defendant as to what the law is, but as to its application.
Affirmed.
Cited: Thompson v. Construction Co., 160 N.C. 392; Horne v. R. R.,170 N.C. 660.