CLARK, C. J., concurring; HOKE, J., concurring in part; WALKER, J., dissenting; BROWN, J., concurring in the dissenting opinion.
(646) Action to recover damages for wrongful death, alleged to have been caused by the negligence of the defendant. *Page 729 
Plaintiff's intestate was a section foreman of the defendant. He had been at word at New Berlin, and on the night he was killed he and other employees of the defendant went to Farmers on a hand-car. He was killed on his return, at night, by an engine of the defendant, which, according to the evidence of the plaintiff, had no headlight.
The evidence of the plaintiffs tended to prove that their intestate was a section foreman in the defendant's employ at New Berlin on 1 September, 1914. On that night he took the lever-car and went to Farmers to attend to some business, as there was no train in that direction, and took with him five or six hands. He did not say whether the business was his or the business of the company. He waited for the passengers train to pass, and then they put the lever-car on the track and started back to New Berlin. The track was straight at that point for 10 miles, 5 miles in each direction, and, according to plaintiffs' evidence, they were looking out both front and rear for any approaching train, though there was none scheduled to pass at that hour; they could have seen a headlight 5 miles off. Suddenly, 35 to 40 feet in front of them, out of the darkness there loomed up an engine which was running without any light at all, and at the rate of 50 or 60 miles an hour; that an alarm was given and everybody jumped off but the intestate Horne, who was struck and killed. The engine was going so fast that it went half a mile or at least a third before it stopped. A witness said that he could have seen a headlight on a straight track that night 10 or 12 miles; the witness further said that the lever-car could be seen from the engine at least three-quarters of a mile off under the glare of an electric headlight. He further testified that there were three public crossings between the station at Farmers and where Horne was killed, and that the engine did not blow at either of these crossings or ring any bell. In going from New Berlin to Farmers they went on the main line 5 miles east in the direction of Wilmington; they started about 7:30 p.m. and got there about 8:10 p. m., and started back at midnight. The witness further said that some foremen used their lever-cars at night, but it was not an habitual custom. There was no evidence from the plaintiff that it was against the rules of the company to use the lever-cars at night. Several witness testified that the night was slightly foggy, but there was no light whatever on the engine, and if there had been they could have seen it; that there was neither headlight nor sidelights; that if the engine had a headlight the engineers could have seen three-quarters of a mile ahead of him; that the witness had ridden on an engine with an electric headlight many times and kept a lookout, and could see at night three-quarters of a mile ahead under the electric light. That the deceased said that he was going down to Farmers to see the agent, and that his force had to move from New Berlin the next morning. (647) *Page 730 
The witnesses also testified that if there had been an electric headlight on the engine they could have seen it 2 or 3 miles down the track, in ample time to have gotten the car off the track, which they could have done in a couple of minutes.
The defendant introduced a rule of the company forbidding the use of hand-cars at night or in foggy weather without the permission of the roadmaster, and the roadmaster testified that he had not given permission to use the car on the night the intestate was killed.
The defendant also introduced evidence tending to prove that the engine was properly equipped with lights and that signals were sounded at the several crossings.
At the conclusion of the evidence his Honor entered judgment of nonsuit, and the plaintiffs excepted and appealed.
The evidence for the plaintiff, which must be accepted as true for the purpose of nonsuit, establishes the negligence of the defendant in that it was running its train in the night-time without a headlight, and it is conceded that the judgment of nonsuit cannot be sustained except upon the ground of contributory negligence.
There are two valid objections to coming to this conclusion.
The first is that, while after much discussion the rule was adopted that a judgment of nonsuit might be entered if it clearly appeared from the evidence of the plaintiff that he was guilty of contributory negligence, this rule has never been extended so as to permits the consideration of evidence offered by the defendant tending to prove contributory negligence.
In this case the negligence attributed to plaintiffs' intestate is that he was upon the track in violation of the rules of the company, and there is nothing in the plaintiffs' evidence to show that a rule was in existence or that the intestate was at the time of his death violating any rule.
The burden of the issue of contributory negligence was on the defendant, and in order to sustain this burden it introduced a rule of the company which forbade the use of the hand-car at night without the permission of a superior officer, and it also introduced the officer to prove that he and had not given the permission. If this evidence coming from that defendant was not believed by the jury, the issue of contributory negligence could not have been answered against the plaintiff, and the jury alone has the right to say whether or not the evidence is true.
(648) This principle is vital under a system which makes jurors triers *Page 731 
of the fact, and a departure from it would invest the judge with the power to pass on the weight of the evidence and to determine the fact.
The second is that if it be conceded that the intestate was guilty of negligence the question of proximate cause was for the jury, and ought to have been presented to them either under a separate issue or under an instruction that although the plaintiff was upon the track in violation of the rules of the company, and was therefore negligent, that he would be entitled to recover damages if, notwithstanding that negligence, the jury found as a fact that if the defendant had had a headlight the intestate would have been discovered in time to avoid the injury, or that if the headlight had been present the plaintiffs' intestate would have seen it in time to take the car from the track.
The evidence on the part of plaintiffs tends to prove that the track of the defendant in the direction from which the train was coming was straight for a distance of 5 miles; that a headlight could have been seen at that distance; that those on the hand-car were looking in that direction for the approach of a train; that if there had been a headlight they could and would have seen it in time to take the hand-car from the track; and that with a headlight the engineer could easily have seen the car in time to avert the injury.
In Heavener's case, 141 N.C. 245, the Court approved an instruction that "If the jury should further find from the evidence that if there had been a proper light on the engine, or if the bell had been ringing, the intestate would have had notice of the approaching train in time to escape the danger, and if the plaintiff by reason of not having such notice or warning was injured, then such failure to have the headlight or other proper signal was continuing negligence and would be the proximate cause of the injury," and this was affirmed in Shepherd v. R. R., 163 N.C. 520.
If the plaintiffs' intestate was negligent in violating a rule of the company, was his negligence greater than the negligence of a person who is killed while upon the track in a state of voluntary drunkenness? It would seem not, and in Griffin v. R. R., 166 N.C. 626, it was held that the question of the contributory negligence of one killed upon the track while intoxicated was for the jury, the Court saying: "We have the facts in evidence that the engine was without any headlight; furthermore, that it ran over and killed the intestate. . . . We have, therefore, in evidence both the negligence and the injury. . . . It is immaterial whether the intestate was a licensee or a mere trespasser. The defendant owed it to him and to all other persons, whether on the track rightfully or wrongfully, to have had a headlight upon its engines in order that the engineer might be enabled to discover, not only human beings, but any obstruction upon the track. . . . There is evidence in the *Page 732 
(649) record from which the jury may find, if they see fit, contributory negligence upon the part of the intestate; but the evidence is not of that character as will justify the Court in any view of it to sustain a motion to nonsuit upon that ground."
This case has an important bearing upon the question before us, because it establishes the principle that although the intestate was negligent, the defendant owed him the duty to have a headlight, "whether on the trackrightfully or wrongfully," and that he could not be declared guilty of contributory negligence as matter of law.
If so, why does not the same rule prevail in this case, as the most that can be said of the conduct of plaintiffs' intestate, if he was violating a rule of the defendant, is that he was wrongfully on the track?
In Tyson v. R. R., 167 N.C. 216, the plaintiff's intestate was killed by a train running without a headlight, and the issue of contributory negligence was answered in favor of the defendant.
A recovery of damages was sustained, and Justice Brown says, in discussing the question as to whether there was evidence to support the finding that notwithstanding the negligence of the intestate, the defendant's engineer by the exercise of ordinary care could have avoided the injury: "There is evidence in this case that the engineer, by keeping a watchful lookout, with a good headlight, could have seen the intestate in the position described by the witnesses, and, going up grade, could have stopped his train within 50 yards. There is evidence that he had a very poor oil headlight, and it was about dusk at the time when his train killed the intestate.
"Taking all of these facts together, we think there is sufficient evidence to have gone to the jury for their consideration to the effect that if the engine had been properly equipped with a proper headlight, and the engineer had kept a diligent lookout ahead of him, he could have discovered, by reasonable care, the condition of the intestate, and could have stopped his train in time to have saved his life."
Again, the Court said in Cullifer v. R. R., 168 N.C. 311: "It is well settled in this State that where the plaintiff is guilty of contributory negligence the defendant must exercise ordinary care and diligence to avoid the consequences of the plaintiff's negligence, and if by exercising due care and diligence the defendant can discover the situation of the plaintiff in time to avoid injury, the defendant is liable if it fails to do so."
In McNeill v. R. R., 167 N.C. 390, the Court concludes the opinion with this statement: "The theory upon which recoveries are sustained when a person upon the track is killed or injured by a train running in the night without a headlight, although not apparently helpless, is that the absence of the headlight is negligence, and as its presence would *Page 733 
probably give notice of the approach of the train by throwing light on the track and upon the person, the failure to have the light is (650) some evidence of proximate cause."
In other words, if it is admitted that both the defendant and the intestate of the plaintiff were negligent, the negligence of the plaintiffs' intestate does not bar a recovery unless it was the proximate cause of the injury, and the question as to whether it was the proximate cause is for the jury, if two reasonable minds could come to different conclusions upon the question; and here there is evidence that although the intestate was negligent, if the defendant's train had been running with a headlight he would not have been injured, because the headlight would have been seen, if the evidence of the plaintiff is to be believed, in time to take the car from the track, or the engineer could with a headlight have discovered the intestate in time to avoid the injury.
In Boney v. R. R., 155 N.C. 107, the plaintiff's intestate, an engineer, was killed by running into an open switch, and at the time of his death he was violating a rule of the company by running his train at a speed of 30 miles an hour, when the rule required that he should not approach the switch at more than 6 miles an hour. A recovery of damages was sustained upon the ground that although he was negligent, the defendant could have averted the injury by the exercise of ordinary care. The Court said: "If the intestate knew that there was no light at the switch, and was running in excess of 6 miles an hour, he was negligent; but it is not every act of negligence on the part of the plaintiff that is contributory negligence in its legal sense. It is not contributory unless it is the real cause of the injury; nor is it so if the defendant, by the exercise of ordinary care, can avert the injury, notwithstanding the negligence of the plaintiff."
Reversed.