W. J. GODWIN v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 23 December, 1931.)

**Railroads D b—In this action for damages suffered in accident at cross-
ing the evidence is held insufficient to be submitted to the jury.**

In an action for damages resulting in a collision at a grade crossing
the evidence tended to show that two tracks of the defendant crossed
the road, that the plaintiff was thoroughly familiar with the crossing, and
that before attempting to cross he stopped 45 or 50 feet therefrom where
his vision was obstructed by trees growing off the right of way, and
looked and listened without discovering defendant's approaching train,
that he did not again stop although at fifteen feet from the crossing his
vision was unobstructed in the direction from which the train was coming
for two hundred yards, that he saw the train when his front wheels were
upon the first track and went on across although the train was coming
upon the second track, *Held:* the evidence was insufficient to be submitted
to the jury and the railroad company's motion as of nonsuit was properly
allowed. The evidence as to rough places in the crossing is immaterial
as nothing indicated that such was a cause of the injury in suit.

CIVIL ACTION, before *Moore, Special Judge,* at April Term, 1930, of
HARNETT.

On the morning of 26 April, 1930, the plaintiff was going to his farm
which was situated west of the defendant railroad. The car was driven
by plaintiff's son, but under the direction and control of plaintiff. The
road upon which plaintiff was traveling crossed the tracks of defendant

1—202

at grade at a point known as Gainey's crossing. There was a North
Carolina stop sign near the crossing. Plaintiff's narrative of the col-
lision and injury is substantially as follows: "I stopped about forty-five
or fifty feet from the first rail. From the point where I stopped I could
not see down the railroad track for a bunch of willow trees. . . . I
stopped behind the willow trees. The willow trees reached up to
the right of way. . . . We looked both ways for a train and didn't
see the right of way. . . . We looked both ways for a train and
didn't see one or hear the whistle blow or the bell ring. After thinking
that our way was clear, we went on and just as the wheels of our car
got on the first track the train tooted once and we drove on trying to
get off the track, and the car was struck by the train. The car was
within twenty-five or thirty yards of us when it tooted one time. . . .
The first track was right smart lower than the next track, about fifteen
or twenty inches lower, and the crossing was narrow. The road bed
where the crossing is was just wide enough for one car to go across.
I have crossed the railroad at 'this point a great many times before.
In crossing the first track there is a sudden rise across the next track.
That track is elevated some fifteen or twenty inches. The surface of the
crossing was rough. . . . I was born within three miles of Dunn
and used this crossing on an average of two or three times a day for
twenty years. I was perfectly familiar with the crossing. The railroad
. . . runs through an open field and runs north and south. The
road on which I was traveling runs about east and west."

The plaintiff also offered evidence tending to show that the view
of a traveler approaching the crossing was obstructed. The testimony
with respect to such obstructions is substantially as follows: "There is
a cut about two hundred yards south of the crossing. There are certain
willow trees which are about seventy-five yards south of the crossing.
These trees were twelve or fifteen feet high. However, the evidence
tended to show that these willow trees were not on the right of way.
One of the witnesses for the plaintiff testified that the willow trees were
on the land of a man named Jim Woods. There was a persimmon tree
about seventy-five yards below the willow trees. This would place the
persimmon tree about one hundred and fifty yards south of the crossing.
The persimmon tree was not on the right of way. There was an em-
bankment two hundred yards or more south of the crossing. Plaintiff
testified: "I would have to get something like ten or fifteen feet of the
track before I· could see south beyond the embankment or cut; that
is to say, that within ten or fifteen feet of the first track a traveler could
see toward the south more than two hundred yards." The train which

struck plaintiff's car was a fast passenger train, traveling northward, and the plaintiff was traveling westward. There was evidence that the train was running at a very rapid rate of speed. There was no evidence of any obstruction whatever on the north side of the crossing. The evidence showed that the train was traveling on the second track.

At the conclusion of plaintiff's evidence the trial judge sustained the motion of nonsuit and the plaintiffs appealed.

*C. L. Guy and Young & Young for plaintiff.*
*Rose & Lyon and Clifford & Williams for defendant.*

BROGDEN, J. The evidence offered by plaintiff presents substantially the following situation: A traveler in an automobile approaches a grade crossing in the day time with which he is thoroughly familiar. He stops about forty-five or fifty feet from the first track and looks and listens, and neither hears nor sees the train. His vision is obstructed by willow trees at the point where the stop is made. Thereupon he proceeds toward the first track, apparently without stopping, looking or listening until the wheels of his car were on the first track. He then hears the whistle of a train and looks up and discovers a rapidly moving passenger train bearing down upon him, twenty-five or thirty yards away. The train is on the second track and the traveler in his own words "drove on trying to get off the track, and the car was struck by the train."

There was evidence that the crossing was rough and that the rails of the second track were fifteen or twenty inches higher than the rails of the first track, but no evidence is offered tending to show that the car of the traveler became engaged with the rails or that the rough condition of the crossing contributed to the injury. Within ten or fifteen feet of the first track the traveler had an unobstructed vision of two hundred yards to the south of the crossing, and the train was approaching from the south, traveling northward.

The Court is of the opinion that the facts classify this case in that line of decisions represented by *Trull v. R. R.,* 151 N. C., 545, 66 S. E., 586; *Coleman v. R. R.,* 153 N. C., 322, 69 S. E., 129; *Bailey v. R. R.,* 196 N. C., 515, 146 S. E., 209; *Eller v. R. R.,* 200 N. C., 527, 157 S. E., 800.

Affirmed.