VERNON TART, by His Next Friend EDWARD TART, v. SOUTHERN RAILWAY COMPANY and NORTH CAROLINA RAILROAD COMPANY.

(Filed 8 January, 1932.)

1. **Appeal and Error J g—Where judgment overruling motion of nonsuit is reversed, other alleged errors in trial become immaterial.**

    Where the Supreme Court on appeal reverses the judgment of the lower court overruling the defendant's motion as of nonsuit, other alleged errors in the trial of the action become immaterial and will not be considered on appeal.

2. **Railoads D b—Evidence of plaintiff's contributory negligence held to bar recovery as a matter of law.**

    Where in an action by an eleven-year-old boy, brought by his next friend, to recover for an injury received by the plaintiff in an accident at a railroad crossing, the plaintiff introduces some evidence of the defendant's negligence in failing to give the proper signals and warnings of its approaching train, etc., but considering only the evidence most favorable to the plaintiff, it tends to show that he attempted to walk across the defendant's tracks at a grade crossing, that there was an open space of about twenty feet between a track on which some box cars were standing and the track on which the train was approaching, that the track was straight for some distance and that the defendant's train could have been seen and heard, that the plaintiff failed to see the train until it was almost upon him, when he started to run, fell, and was struck and injured, but that he was normally alert and intelligent for his age: *Held,*

the evidence discloses contributory negligence barring recovery as a matter of law, and the defendant's motion as of nonsuit should have been allowed, the law not extending its protection to those who can see and hear and will not do so.

3. **Negligence O a—Degree of care law requires to be exercised by eleven-year-old boy for his own safety.**

While an eleven-year-old boy is not chargeable with the exercise of that degree of caution before crossing a railroad track as a person of mature years, he is required to exercise that degree of care as is reasonably within his capacity and which the evidence shows that he should have exercised for his own safety.

APPEAL by plaintiff from *Warlick, J.,* at September Term, 1931, of GUILFORD. Affirmed.

This is an action to recover damages for personal injury alleged to have been suffered by the plaintiff through the negligence of the Southern Railway Company. The case was tried in the Municipal Court of the city of High Point. The defendants' motion for nonsuit was denied, the usual issues were submitted to the jury and answered in favor of the plaintiff, and judgment was given awarding damages. The defendants appealed to the Superior Court, and the judgment of the municipal court refusing the motion for nonsuit was reversed.

*Gold, York & McAnally for plaintiff.*
*Roberson, Haworth & Reece and Richard C. Kelly for defendants.*

ADAMS, J. Whether other error prejudicial to the defendants was committed during the trial in the municipal court is a matter with which we need have no concern if the Superior Court was correct in dismissing the action, and this question we must determine by giving to the evidence such construction as is most favorable to the plaintiff. Given this interpretation the evidence tends to establish the following facts:

The plaintiff was injured at the Taylor Street crossing in the city of High Point. At this place the defendants have five tracks extending northeast and southwest: a sidetrack, a passing track, the southbound main line, the northbound main line, and another sidetrack. Broad Street runs parallel with the tracks on the north side and Taylor Street intersecting with Broad Street crosses the tracks and intersects with Millis Street on the south. Midway between the outside tracks the crossing was about ten feet in width—wide enough for one automobile to pass another; at other places it was much wider. It was smooth in the center but on each side the rails were two or three inches above the ground. There was an arc light fourteen steps from the outside rail on the west side of the railroad. A watchman's house, six by eight feet,

stood near the intersection of Broad and Taylor streets, but at the time of the injury no watchman was on duty.

On the evening of 4 April, 1930, at about half-past seven o'clock the plaintiff and Gilchrist Newell passed from the south side over the Taylor Street crossing, went to a drug store for ice cream, and started back to the home of the plaintiff's aunt. They passed the watchman's house and again went on the crossing. On their right-hand, that is, fourteen steps from the southern side of the crossing there were box cars on the sidetrack and the passing track nearest Broad Street. Between the second track from Broad Street (the passing track) and the northbound track on which the injury occurred lies the southbound track. The distance between the passing track and the southbound is about ten feet, and ten feet between the southbound and the northbound, making an open space of about twenty feet between the passing track and the northbound track. On the latter a long freight train came from the south or southwest.

The plaintiff was eleven years and seven months old. He and his companion were walking. He testified that no signal was given of the approaching train—that he heard neither bell nor whistle. He then portrayed the accident.

He said that he looked before going on the tracks but could not see the train on account of the box cars; that he looked again at the watchman's house; that he looked the last time when he was in front of the cars; and that he did not know how many tracks he crossed or the track on which the train was running. When asked whether he looked after he had passed the cars he answered, "The train was right on me when I looked; . . . that was after I had passed the end of the box cars. . . . It was right on me and I started to run and fell . . . I fell on my hands and the train hit me as I was getting up. I didn't see the train before I started to run across. I never saw the train until it was right over me. I saw the train before I stumbled; I was not running when I stumbled; I started to run and fell. I was in the middle of the track, right at it. I was right on one of the tracks when I first saw the train, on the track the train was on. After that is when I stumbled and fell. I stumbled on a rail, the rail the train was on. I didn't fall over the one I was standing on; I fell over the next one. . . . The front part of the train hit me, the cowcatcher. I was in the middle of the track and that was the first time I saw the train . . . I looked after I went by the end of the cars. The train was right on me. I got hit before I saw it."

The plaintiff's evidence tended to show that the tracks were straight for at least three-quarters of a mile, although the plaintiff testified

that at one place there·was a curve. His father said the accident happened sixty-one steps from the crossing, and there, on the north side, the plaintiff was found with a crushed leg and a cut on his back. Other witnesses testified in corroboration.

Giving the plaintiff the benefit of every reasonable inference and granting the engineer's negligent failure to signal the approach of the train and the railway's negligent failure to observe the ordinance, we cannot escape the conviction that the plaintiff's negligence was the proximate cause of his injury. After going over the two tracks on which the box cars were standing he entered a zone twenty feet in width in which according to all the evidence he offered the range of his vision was unobstructed, and deliberately walked directly in front of the on-coming train. To say that he did not see or hear it is a challenge to universal experience. The courts give slight heed to the testimony of a witness who is willing to say that he cannot see or hear when there is nothing to keep him from seeing and hearing: "The law is not able to protect one who has eyes and will not see—ears and will not hear." *Harrison v. R. R.,* 194 N. C., 656. The plaintiff first saw the train when it was "right on" or "right over" him; he did not say that he could not have seen it, merely that he did not. His testimony manifests his negligence. *Eller v. R. R.,* 200 N. C., 527; *Bailey v. R. R.,* 196 N. C., 515.

Upon the facts disclosed his age does not bar the defense of contributory negligence. The doctrine is settled that a child is not chargeable with the same degree of care as an experienced adult and that the standard of conduct varies with his age, capacity and experience; but he must exercise care and prudence equal to his capacity. *Alexander v. Statesville,* 165 N. C., 527. The law with reference to the employment of minors in the operation of machinery has no application. *Rolin v. Tobacco Co.,* 141 N. C., 300; *Hauser v. Furniture Co.,* 174 N. C., 463. In traversing a public crossing the plaintiff was required as a matter of self-protection simply to make use of his eyesight and his hearing. He was an "average boy, had been in several schools," and was fully competent to perform this duty. *McCulloch v. R. R.,* 188 N. C., 797; *Foard v. Power Co.,* 170 N. C., 48; *Murray v. R. R.,* 93 N. C., 92.

In the foregoing discussion we have not considered any part of the defendants' evidence which is repugnant to or inconsistent with that of the plaintiff. It may be noted, however, that four of their witnesses testified to a statement of Gilchrist Newell, who was with the plaintiff, to the effect that he "hopped the train and Vernon was to catch it right behind him": that he jumped off, sought the plaintiff, and found him

injured. The plaintiff's evasive answers to questions asked him on cross-examination in regard to these circumstances are not characterized by commendable frankness. However this may be, the proximate cause of the deplorable injury must be assigned to the plaintiff's negligence.

Judgment

Affirmed.