HATTIE M. PITT, ADMINISTRATRIX OF TOM PITT, DECEASED, v. ATLANTIC
COAST LINE RAILROAD COMPANY.

(Filed 5 October, 1932.)

Railroads D b—Evidence disclosed contributory negligence in crossing
defendant's tracks barring recovery as matter of law.

Where the evidence discloses that the plaintiff's intestate approached
the two parallel live tracks of the defendant at a grade crossing, that a
flagman was standing at the crossing with a flag and stop sign in his
hands, that the intestate went upon the tracks apparently watching a
freight train approaching from his left and was struck by a passenger
train approaching from his right at an excessive speed and without
signal in violation of the municipal ordinance: *Held*, a judgment as of
nonsuit is properly entered.

CIVIL ACTION, before *Cranmer, J.,* at February Term, 1931, of NASH.

This was a civil action to recover damages for wrongful death. The
evidence tended to show that the defendant operates a line of railroad
running through the town of Elm City. The public highway crosses
the tracks at grade. There are two main tracks at the crossing, the
east track being the northbound, and the west track being the south-
bound. The evidence further disclosed that the defendant maintained
a watchman at said crossing.

On or about 6 December, 1930, at about four o'clock in the afternoon,
the plaintiff's intestate, riding in a buggy and driving a mule, under-
took to cross the tracks. At the time, a freight train of defendant was
approaching the crossing from the south going north. One eye witness
to the killing testified as follows: "I saw the train when it struck his
mule and buggy. He came around the corner of the depot and drove
up by the side track, and just as he drove up on the side track the watch-
man came out with his sign and walked into the middle of the side-
walk, and just as the flagman held up his sign Thomas Pitt's mule had
entered into the main track. I did not hear any whistle or other signal
from the train until it had struck Thomas Pitt and had stopped. Then
the bell rung and the whistle blew. The tower where the watchman stays
is about seven or eight yards off from the railroad track on the east
side. On the day in question I saw the watchman when he came out of
this tower or house. At the time he stepped out Thomas Pitt had just
entered around the curve, had come into the center of the road, and had
entered upon the spur-track. The watchman stepped out and gradually
walked on out in the center of the road. As he came out from the tower
house and walked to the middle of the street he had in his hand a flag
and a stop sign. He had them down to his side, didn't have them up.

. . . In my opinion the watchman was about six or seven or eight feet from the mule's head at the time he threw up his signal. . . . There was a freight train coming from the south and the passenger train which hit Thomas Pitt, was coming from the north. . . . He drove up on the switch-track and time the train hit his mule's head the mule was on the fast line track. I don't mean the spur-track. He didn't stop. He didn't look, but drove up on the track." Another eye witness said: "There is a driveway that runs south into the main street running from Rocky Mount to Wilson. Thomas Pitt came out of this driveway from the side station and he turned into the highway, headed toward the railroad, and about the time he drove into the Main Street headed toward the railroad, this flagman walked out, and both of them started to move about the same time, I reckon, and Thomas Pitt, he drove on and the flagman he came on, and just about the time Thomas Pitt got to the pass track where the box cars are on, the watchman raised his flag, and Thomas Pitt began to pull his old mule. He had his head south all the time. At the time the flag was raised the mule was not trotting. He was walking along peart with Pitt rushing him a little. He was pulling the reins. . . . There was a freight train coming from the south, which was Thomas Pitt's right as he approached the railroad track. At the time Thomas Pitt was headed east the passenger train that struck his mule was coming from the north, which was to his left. When Thomas Pitt turned into the highway from the driveway from behind the station he turned his head to the south and was watching the freight train I guess. . . . He kept his eyes to the south, on the northbound freight train, until I heard the train, the southbound passenger train, blow. . . . Until the time the train blew Thomas Pitt did not turn his head northward to the left. . . . From a distance of about seventy-five feet from the southbound main line track Thomas Pitt was going towards the track with his head to the south the entire time." Another eye witness said: "As Thomas Pitt swung his mule around the corner of the station into the highway I think the mule was walking. Thomas Pitt pearted his mule by jerking the reins and slapping him. I am not positive, but I think he was looking southward all the time, toward the freight train which was approaching from the south." There was evidence that the station and certain box cars obstructed the vision of travelers upon the highway, and that the passenger train which struck and killed the deceased, gave no signal by whistle or bell, and was traveling at forty or fifty miles an hour in violation of the city ordinance prescribing a speed limit of fifteen miles.

The defendant offered no evidence, and at the close of plaintiff's evidence, judgment of nonsuit was entered, and the plaintiff appealed.

*Cooley & Bone and J. W. Keel for plaintiff.*
*Thomas W. Davis and Spruill & Spruill for defendant.*

PER CURIAM. A traveler in a buggy, in the day time, approaches two parallel live tracks of defendant. A freight train, some distance away, is approaching the crossing from the right of the traveler. A fast passenger train, without signal, and in violation of the municipal ordinance, is rushing upon the crossing from the traveler's left. A flagman is standing at the crossing with a flag in one hand and a stop sign in the other. While it is unnecessary to decide, in this case in what manner a flagman should carry his signals in the face of danger, it is obvious that the symbols of danger were at hand. Moreover, the traveler was apparently watching a freight train approaching from his right, and unfortunately failed and neglected to glance to the left where the passenger train was almost upon him. The rule of liability upon such fact-status warrants and sustains the ruling of the trial judge. *Coleman v. R. R.,* 153 N. C., 322, 69 S. E., 129; *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598; *Godwin v. R. R.,* 202 N. C., 1; *Tart v. R. R.,* 202 N. C., 52.

Affirmed.