MRS. W. H. GODWIN v. ATLANTIC COAST LINE RAILROAD COMPANY ET AL.

(Filed 5 November, 1941.)

**1. Negligence §§ 17a, 19b—**

Nonsuit on the ground of contributory negligence should not be granted upon defendant's evidence since defendant has the burden of proof on the issue and the credibility of its evidence would be for the jury, but nonsuit is properly entered when plaintiff's own evidence establishes contributory negligence constituting a proximate cause of the injury, since in such event plaintiff proves himself out of court.

**2. Negligence §§ 11, 19b—**

In order to sustain nonsuit on the ground of contributory negligence it is not necessary that plaintiff's own evidence establish contributory

negligence constituting the sole proximate cause of the injury, it being sufficient if plaintiff's evidence discloses contributory negligence constituting one of the proximate causes, the term contributory negligence *ex vi termini* implying negligence on the part of defendant.

**3. Negligence § 17b—**

Where the conclusion that plaintiff was guilty of contributory negligence constituting one of the proximate causes of the injury is the only reasonable inference that can be drawn from plaintiff's own evidence, such evidence, *pro hoc vice,* partakes of the nature of admissions and reduces the case to a question of law for the court, and defendant's demurrer to the evidence is properly sustained.  C. S., 567.

**4. Railroads § 9—**

In approaching a grade crossing, both the trainmen and travelers upon the highway are under reciprocal duty to keep a proper lookout and exercise that degree of care which a reasonably prudent person would exercise under the circumstances to avoid an accident at the crossing.

**5. Same—**

A railroad company is under duty to give travelers timely warning of the approach of its train to a public crossing, but its failure to do so does not relieve a traveler of his duty to exercise due care for his own safety, and the failure of a traveler to exercise such care bars recovery when such failure is a proximate cause of the injury.

**6. Trial § 22a—**

A motion to nonsuit questions the sufficiency of the evidence to carry the case to the jury and to support a recovery, which is always a question of law to be determined by the court.  C. S., 567.

**7. Railroads § 9—Plaintiff's own evidence held to establish, as a matter of law, contributory negligence constituting a proximate cause of crossing accident.**

Plaintiff, traveling east, was struck by defendant's regular northbound train at about noon on a clear day at a crossing a short distance from plaintiff's residence in a municipality.  Plaintiff testified that she was familiar with the crossing and knew the schedule of defendant's trains, that she stopped about nine feet from the first track, looked to the south and did not see a train, and then started across at a slow speed and was struck on the third track by the northbound train, which she did not see until "it was right on me."  There was evidence that, approaching the crossing, the view of the track to the south was limited to a block and a half by obstructions on the right of way, but a witness for plaintiff testified that in traversing the crossing from the west the view of a motorist was unobstructed after reaching the first track, and that there was a distance of about twenty-four feet from the west rail of the first track to the west rail of the third track.  *Held:* Plaintiff's own evidence establishes, as a matter of law, contributory negligence constituting a proximate cause of the accident.

APPEAL by defendant from *Nimocks, J.,* at May Term, 1941, of HARNETT.

Civil action to recover for personal injuries and property damage alleged to have been caused by the negligence of the defendant.

The record discloses that on 27 April, 1940, the plaintiff and her niece were riding in plaintiff's Chevrolet sedan when it was struck by defendant's train at a street crossing in the town of Dunn, resulting in serious personal injuries to the plaintiff and damage to her automobile.

The plaintiff lives at the corner of West Divine Street and Railroad Avenue, within a very short distance of the crossing where the accident occurred. Divine Street crosses the railroad tracks at right angles, and Railroad Avenue runs parallel to the tracks and between plaintiff's residence and the railroad. Plaintiff was familiar with the train schedules and knew the regular northbound fast passenger train No. 80 ran through the town every day about noon. She is 45 years of age and has lived there for more than ten years. Approaching the Divine Street triple-track-crossing from the west in the direction plaintiff was coming and looking from the "stop sign" erected by the railroad to the south, the direction in which the train was coming, the view is clear for a distance of a block and a half. In this second block are two section houses and a water tank on defendant's right of way, which obstructed plaintiff's view beyond the first section house. This first section house is 350 feet according to plaintiff's evidence, and by actual measurement, 446 feet from the south side of Divine Street. The water tank is 815 feet from Divine Street.

Plaintiff testified that when she got to the "stop sign," she stopped, looked to the south "and the coast was clear and I didn't see any train whatever." She then "pulled up nearly to the crossing" so that she could see past the warehouse on her left "and looked back to the right and I didn't see any train," didn't hear any bell or whistle signal, "and I proceeded on slowly and approached the track as slow as I could, and when I got on the track or just about across, the train came steaming around . . . at a terrific rate of speed, 45 or 50 miles an hour. . . . It was right on me before I knew it . . . before I had time to do anything. . . . The train was almost to the switch when I first saw it. . . . The engine was in about 20 feet. . . . There was a crash and that is the last I knew." (Cross-examination) : "At the time of the accident, it was broad open daylight, about noon. . . . I knew train No. 80 ran through there every day about that time. . . . It. was a clear, sunny day. . . . I did hear the whistle blow but it was right on me, just a short distance from me when it blew. . . . I could not have heard the noise two blocks away. . . . I have been driving an automobile about 14 years. . . . From the point where I stopped the second time, you cannot see as far as the water tank. . . . I stopped my car about 9 feet from the (spur) track. . . . I drove about 20 feet, while the train went at least 350 feet."

GODWIN *v.* R. R.

Plaintiff's witness, O. R. Pearce, testified that it is "about 24 feet from the west rail of the spur track to the west rail of the northbound track. Continuing east from the spur track, when you get to the next railroad track, which is the southbound track, and look to your right you will have a straight angle then from every way and you can see as far as you can look. Looking from any point on the extreme west of the right of way until one gets past the southbound track and between the southbound track and the northbound track, a person can see a train just as far as they can see, looking either north or south. After you get on the spur track, a person going east across the Divine Street crossing and until the time they got on the northbound track on which No. 80 was running on the 27th day of April, 1940, could have seen a train down the south any way you looked at any of the crossings. This applies to any of the crossings in the town of Dunn."

The engineer testified that he had just passed Main Street crossing and Pearsall Street crossing in the town of Dunn, and as he approached Divine Street crossing he had slowed down to 20 or 25 miles an hour, with the engine bell ringing; that he stopped after the accident in about three car lengths; that the bell was then ringing, and that had he been running 45 to 50 miles an hour he could not have stopped in so short a distance.

These central facts were amplified by other witnesses and additional testimony, and there was evidence from the defendant in contradiction of plaintiff's testimony, but the foregoing will suffice for the disposition which we think must be made of the case.

The defendant demurred to the evidence and asked for a directed verdict on the issue of contributory negligence. Both requests were denied. Exceptions.

The usual issues of negligence, contributory negligence, and damages were submitted to the jury and answered in favor of the plaintiff. From judgment thereon, the defendant appeals, assigning errors.

*J. R. Young and D. C. Wilson for plaintiff, appellee.*
*Thomas W. Davis and Rose & Lyon for defendant railroad, appellant.*

STACY, C. J. The question for decision is whether the plaintiff's contributory negligence is such as to bar a recovery. The pertinent authorities would seem to suggest an affirmative answer. *Temple v. Hawkins, ante,* 26; *Hampton v. Hawkins,* 219 N. C., 205, 13 S. E. (2d), 227; *Pitt v. R. R.,* 203 N. C., 279, 166 S. E., 67; *Godwin v. R. R.,* 202 N. C., 1, 161 S. E., 541; *Batchelor v. R. R.,* 196 N. C., 84, 144 S. E., 542; *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598; *Elder v. R. R., ibid.,* 617, 140 S. E., 298; *Holton v. R. R.,* 188 N. C., 277, 124 S. E., 307;

*Davis v. R. R.,* 187 N. C., 147, 120 S. E., 827; *Wright v. R. R.,* 155 N. C., 325, 71 S. E., 306; *Coleman v. R. R.,* 153 N. C., 322, 69 S. E., 251; *Mesic v. R. R.,* 120 N. C., 489, 26 S. E., 633; *Rigler v. R. R.,* 94 N. C., 604.

It is the prevailing and permissible rule of practice to enter judgment of nonsuit in a negligence case, when it appears from the evidence offered on behalf of the plaintiff that his own negligence was the proximate cause of the injury, or one of them. *Battle v. Cleave,* 179 N. C., 112, 101 S. E., 555; *Wright v. R. R., supra; Beck v. Hooks,* 218 N. C., 105, 10 S. E. (2d), 608. The plaintiff thus proves himself out of court. *Horne v. R. R.,* 170 N. C., 645, 87 S. E., 523. It need not appear that his negligence was the sole proximate cause of the injury, as this would exclude any idea of negligence on the part of the defendant. *Absher v. Raleigh,* 211 N. C., 567, 190 S. E., 897. It is enough if it contribute to the injury. *Wright v. Grocery Co.,* 210 N. C., 462, 187 S. E., 564. The very term "contributory negligence" *ex vi termini* implies that it need not be the sole cause of the injury. *Fulcher v. Lumber Co.,* 191 N. C., 408, 132 S. E., 9. The plaintiff may not recover, in an action like the present, when his negligence concurs with the negligence of the defendant in proximately producing the injury. *Construction Co. v. R. R.,* 184 N. C., 179, 113 S. E., 672.

The reason the defendant's evidence is not to be considered on a motion of this kind, unless favorable to the plaintiff and except for explanatory purposes when not in conflict with plaintiff's evidence, *Harrison v. R. R.,* 194 N. C., 657, 140 S. E., 598, is that the burden of showing contributory negligence rests with the defendant. Nevertheless, when it appears from the plaintiff's own evidence that he was contributorily negligent, which *pro hoc vice* partakes of the nature of admissions, it is proper to dismiss the action as in case of nonsuit. *Davis v. R. R., supra,* and cases there cited. In other words, while the defendant has the burden of proof on the issue of contributory negligence, and the credibility of his evidence would be for the jury, the plaintiff may relieve him of the onus by his own evidence and thus reduce the case to a question of law for the court. *Hayes v. Tel. Co.,* 211 N. C., 192, 189 S. E., 499. What is negligence is a question of law, and, when the facts are admitted or established, the court declares whether negligence exists and whether it is the proximate cause of the injury, or one of them. *Pearson v. Stores Corp.,* 219 N. C., 717; *Murray v. R. R.,* 218 N. C., 392, 11 S. E. (2d), 326; *Dunnevant v. R. R.,* 167 N. C., 232, 83 S. E., 347; *Mitchell v. R. R.,* 153 N. C., 116, 68 S. E., 1059; *Strickland v. R. R.,* 150 N. C., 4, 63 S. E., 161. Such is the case presented by the instant record.

The reciprocal duties and obligations of trainmen and travelers on approaching a public crossing were considered in *Moore v. R. R.,* 201

N. C., 26, 158 S. E., 556. There it was said: "When approaching a public crossing the employees in charge of a train and a traveler upon the highway are charged with the mutual and reciprocal duty of exercising due care to avoid inflicting or receiving injury, due care being such as a prudent person would exercise under the circumstances at the particular time and place. 'Both parties are charged with the mutual duty of keeping a careful lookout for danger and the degree of diligence to be used on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty.' *Improvement Co. v. Stead,* 95 U. S., 161, 24 Law Ed., 403, cited in *Cooper v. R. R.,* 140 N. C., 209. On reaching the crossing and before attempting to go upon it, a traveler must use his sense of sight and hearing—must look and listen for approaching trains if not prevented from doing so by the fault of the railroad company; and this he should do before entering the zone of danger. *Johnson v. R. R.,* 163 N. C., 431; *Holton v. R. R.,* 188 N. C., 277; *Butner v. R. R.,* 199 N. C., 695. This, as we understand it, is the prevailing rule. At any rate it is observed and has often been applied by this Court."

In the application of this rule it is recognized that "a railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when the conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the court." *Coleman v. R. R., supra; Carruthers v. R. R.,* 215 N. C., 675, 2 S. E. (2d), 878. We have said that a traveler has the right to expect timely warning, *Norton v. R. R.,* 122 N. C., 910, 29 S. E., 886, but the failure to give such warning would not justify the traveler in relying upon such failure or in assuming that no train was approaching. It is still his duty to keep a proper lookout. *Harrison v. R. R., supra; Holton v. R. R., supra.* "A traveler on the highway, before crossing a railroad track, as a general rule, is required to look and listen to ascertain whether a train is approaching; and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty." Fourth headnote, *Cooper v. R. R.,* 140 N. C., 209, 52 S. E., 932.

The same rule was declared in *Johnson v. R. R.,* 163 N. C., 431, 79 S. E., 690, where *Walker, J.,* speaking for the Court, used the following language: "On reaching a railroad crossing, and before attempting to go upon the track, a traveler must use his sense of sight and of hearing to the best of his ability under the existing and surrounding circumstances— he must look and listen in both directions for approaching trains, if not prevented from doing so by the fault of the railroad company, and if he has time to do so; and this should be done before he has taken a position exposing him to peril or has come within the zone of danger, this being required so that his precaution may be effective."

In actions involving negligence and contributory negligence, it is often difficult to determine whether the case is one for the jury or one exclusively for the court. *Meacham v. R. R.,* 213 N. C., 609, 197 S. E., 189. This has led to the suggestion that two lines of decisions are to be found on the subject. *Eller v. R. R.,* 200 N. C., 527, 157 S. E., 800. It is conceded on all hands, however, that a motion to nonsuit tests the sufficiency of the evidence to carry the case to the jury and to support a recovery. The question thus presented by demurrer, whether interposed at the close of plaintiff's evidence, or "upon consideration of all the evidence," C. S., 567, is to be decided by the court as a matter of law, and not by the jury as an issue of fact. Whether the evidence is such as to carry the case to the jury is always for the court to determine. A demurrer raises only questions of law.

The case lends itself to much writing, but in the end it all comes to this: Plaintiff testifies that she was familiar with the crossing; that she knew the schedule of defendant's trains; that she stopped the second time about nine feet from the spur track, looked in the direction the train was coming and did not see it—not that she could not see it, but that she did not see it—and then proceeded slowly towards the crossing without seeing or hearing the train until "it was right on me." It thus appears, from her own testimony, that she started her car and drove a distance of at least 20 feet across two tracks and onto a third in front of an on-coming train which she knew was due to pass about that time and which she should have seen in the exercise of reasonable care. This was negligence on her part which contributed to the injury. *Tart v. R. R.,* 202 N. C., 52, 161 S. E., 720.

It results, therefore, that the motion for judgment of nonsuit should have been allowed.

Reversed.