ELOISE BOYD, by Her Next Friend, WILLIE BOYD, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 24 May, 1950.)

**Railroads § 4—**

> Evidence *held* to show contributory negligence as a matter of law barring recovery for injuries received by plaintiff when she rode her bicycle onto the tracks of defendant railroad company at a grade crossing, and was struck by defendant's train.

Appeal by plaintiff from *Stevens, J.,* at September-October Term, 1949, of Columbus.

Civil action to recover damages for personal injury allegedly resulting from actionable negligence of defendant,—nonsuit granted at close of plaintiff's evidence.

Plaintiff alleges in her complaint, and on the trial in Superior Court offered evidence tending to show substantially these facts:

(1) That on 25 October, 1947, a railroad track of defendant passed north and south through the main business district of Tabor City between two parallel main thoroughfares or streets, and crossed three east-west streets, which connected the said thoroughfares at intervals of about 75 yards,—all of the cross streets then being south of railroad depot or station.

(2) That on Saturday afternoon, 25 October, 1947, as plaintiff was riding her bicycle from east to west along the southernmost of the said three cross streets over the track of defendant, her bicycle was stricken by defendant's train operated over said track and traveling north from the direction of Myrtle Beach,—hurling her to the pavement and causing her painful, serious and permanent personal injury;

(3) That the streets of the town at the time were heavily congested with motor vehicular traffic, and motor vehicles were closely parked on the east side of the railroad, and close to the track, south of the crossing at which plaintiff was attempting to cross—the evidence in particular is that an automobile was next to the crossing, then a truck with high

sides, then a refrigerator truck, and other vehicles for a distance of fifty to one hundred yards;

(4) That the lights at the crossing were not working, and that no blowing of whistle or ringing of bell was heard as the train approached—and that the train was running at speed of 30 to 40 miles per hour.

The complaint of plaintiff alleges these acts of defendant as negligence causing the injuries of which plaintiff complains: (a) Negligent failure to ring a bell or sound a whistle; (b) train approaching "at a rapid, dangerous, excessive and unlawful rate of speed on Saturday afternoon when the city of Tabor City was congested with pedestrians and motor vehicles and traffic across the three crossings as aforesaid was unusually heavy and the noise from the large crowd was loud enough to drown out the sound of an approaching train, particularly when no bell was rung and no whistle sounded"; (c) permitting automobiles and trucks to be parked along its right of way immediately south and north of the crossing so as to obstruct the view of plaintiff as she was attempting to use the crossing; (d) running of train ahead of schedule without warning of its approach; (e) negligent failure to keep a proper lookout ahead so as to observe the crowded and congested condition on both sides of its track and at the three crossings as it was entering the business district of Tabor City; (f) failure to use due care to have the train equipped with proper brakes for controlling speed of train and stopping same. when confronted with a sudden emergency; and (g) failure to have and maintain proper signals and lights at the said three crossings so as to warn plaintiff and others of the approach of train, when attempting to use said crossings.

Defendant, answering, denied that it was negligent as alleged in the complaint, and pleaded that, if plaintiff were injured as alleged in the complaint, her injury resulted from her own negligence which contributed thereto as a proximate cause, and pleaded same in bar of her right to recover in this action.

Plaintiff, as witness for herself, testified in part as follows: "On the evening of October 25, 1947, I left home about 2:30 o'clock with my mother and daddy. After we got to Tabor City we got up with three girls and one of them borrowed a bicycle and she rode it around Tabor a while and then me and her sister took it and rode it around town . . . We started off riding the bicycle at a point on the west side of the track right near the station. I had with me at that time on the bicycle Charity Grainger. It was a boy's bicycle and she was sitting on the cross-bar in front . . . with her feet hanging off . . . to my right and she was facing to my right . . . We crossed over the track going east by the railroad station . . . out this side of Tabor . . . We turned around and went back to town . . . We came back to the street that is parallel with the railroad track and on the east side of the track . . . We turned in front

of the theatre and went across there . . . I crossed the crossing where I got hurt . . . and turned north toward the railroad station down Main Street and crossed the track at the railroad station and then we turned south going . . . toward the theatre. We passed the theatre and as we were going across the railroad and got to the end of the cars which were parked on the side of the railroad I stopped and put my foot down and looked and I could not see anything or hear anything but I went on across and we never made it. I got part of the way across and everything blacked out."

Plaintiff had previously testified: "There are rails extending alongside of the railroad track up to the crossing . . . not very far from . . . the end of the ties. There were trucks and cars parked on both sides of the railroad track . . . I was crossing from the east side to the west side. I approached the crossing from the north and I could see down the railroad track. I stopped the bicycle and looked and I could see outside the trucks and cars about as far down the track as from here to the back end of the court house (about 30 to 35 yards) . . . There was some kind of lights there up on the side of the railroad. I looked for them and, if they were burning, I solid didn't see them . . . The time I was injured was about 4 o'clock or a few minutes afterwards. The automobiles in the town . . . were just riding one behind another just as close as they could get together."

And on cross-examination, plaintiff further testified in pertinent part: "I was almost 18 in October, 1947. I didn't quite get through the eighth grade. I quit during the year. I had made my grades every year except . . . the fifth . . . I could not count the time I had crossed this crossing before. I was pretty familiar with the crossing at the time of the accident and I knew about the position of the railings out from the end of the cross-ties. I knew about the signal lights on each side of the crossing. I knew that there were stop signs on the side of the crossing. I knew that the train passed there . . . I knew that there was a train due shortly after 4 o'clock coming from Loris. It was due at 4:30. . . . We crossed the crossing at the railroad station twice and we crossed the other crossing one time and the second time we did not get across . . . I stopped at the railroad cross sign on my right . . . I rode the bicycle from the point where I stopped and looked and listened about twenty feet from the track . . . I knew the lights belonged to work but that evening they were not working and I didn't think there was a train and started across the track. I did not look again just before I got to the railroad track. We did not look but one time. The lights were not working and I did not think it was time for the train . . . There were a lot of trucks and things that probably kept my view off the railroad . . . I just don't know why I didn't look the second time . . . There were no buildings

between the street and the railroad track except such structures as the railroad has put there and all I saw was the signal box and the sand and the warning signal. I do not know what prevented me from seeing the train unless it was those cars and big trucks that were parked there right side of the railroad; those same trucks and cars were there the first time I crossed the track. I never noticed how far you can see down the track towards Loris. You can see from this crossing certainly more than a mile and past the State line."

Motion of defendant for judgment as of nonsuit made at the close of plaintiff's evidence was allowed, and, from judgment in accordance therewith, plaintiff appeals to Supreme Court and assigns error.

*Powell & Powell for plaintiff, appellant.*

*Poisson, Campbell & Marshall and E. K. Proctor for defendant, appellee.*

WINBORNE, J. If it be conceded that there is evidence tending to show that defendant was negligent as alleged in the complaint, it is clear from the testimony of plaintiff herself that she failed to exercise due care at the time and under the circumstances of her injury, and that such failure to exercise due care contributed to and was a proximate cause of her injury. The case comes within and is controlled by the principles enunciated in *Godwin v. R. R.*, 220 N.C. 281, 17 S.E. 2d 137; *Bailey v. R. R.*, 223 N.C. 244, 25 S.E. 2d 833; *Penland v. R. R.*, 228 N.C. 528, 46 S.E. 2d 303; and *Carruthers v. R. R., post,* 183.

Hence, further elaboration on the subject would be only repetitious.

The judgment below is

Affirmed.