DON H. BENNETT, by His Next Friend, PAUL D. BENNETT, v. SOUTHERN RAILWAY COMPANY.

(Filed 2 February, 1951.)

**Railroads § 4—**

Plaintiff's evidence tending to show that there was sufficient light at the *locus* to see defendant's engine, which approached on a spur track across a street intersection at five or ten miles per hour, but that plaintiff was blinded by the lights of automobiles at the place and did not see the engine until it struck him, *is held* to disclose contributory negligence barring recovery as a matter of law, notwithstanding negative testimony of witnesses that they did not see a headlight on the engine or hear any warnings of its approach.

APPEAL by plaintiff from *Clement, J.,* May Term, 1950, of FORSYTH.

This is an action to recover for personal injuries sustained by the plaintiff.

According to the evidence Don H. Bennett, a minor, 19 years of age, prior to the time of his injury, worked on a night shift of R. J. Reynolds Tobacco Company, at Factory No. 12, in Winston-Salem, N. C. On the night of 12 August, 1949, the plaintiff parked his automobile on the east side of Patterson Avenue, a short distance from where Second Street intersects Patterson Avenue. The plaintiff had finished his work at the Reynolds plant, about 2:00 a.m., and was returning to where he had parked his car. He was walking east on the south side of Second Street and started to cross the defendant's sidetrack, which is located on the west side of Patterson Avenue, when he was struck by the defendant's diesel shifting engine. Patterson Avenue runs north and south, Second Street runs east and west. The defendant's sidetrack is located on the western edge of Patterson Avenue and adjacent to a loading platform at the southwestern intersection of Second Street and Patterson Avenue.

The plaintiff testified he was familiar with the crossing; that he usually parked his car on the east side of Patterson Avenue; that he had worked for Reynolds for one year when he got hurt; that during that one year period he had made it a practice to park on Patterson Avenue near the intersection, and had gone there to get his car most of the nights, except when he did not work; that when he approached the sidetrack he looked both ways and listened; that it was dark, he did not see any signs of a train, did not hear a bell, or a whistle, or see a light; that there were cars parked along the east side of Patterson Avenue, facing north and at least 15 or 20 on each side of Second Street in that block. "As I went down the street, about to cross the crossing, the cars were cranking up there and flashing on their lights. The lights blinded me. . . . I would say the train was going five or ten miles an hour. It went about half way across the street after it hit me. . . . I did not see it (the engine) until it had done hit me. . . . I could see up the sidewalk to the west on Second Street when I was lying on the ground . . . I could also see south on Patterson."

At the time the engine struck the plaintiff, it was proceeding northward on Patterson Avenue, slightly downgrade and was not pulling anything.

B. L. Willard, a witness for the plaintiff, testified his car was parked about 50 feet from where the plaintiff was hit; that he did not hear any signal given by the ringing of a bell or blowing of a whistle, but he would not say such signals were not given; that he did not know whether the head-light on the engine was burning or not, but he saw the engine hit the boy and there was plenty of light, from the automobiles starting up, to see the engine. "I heard a noise as I was fixing to get in my car, and

I looked around, and then I saw it hit him. . . . I am familiar with the crossing. Trains come in there and leave cars at night to be loaded during daytime every day of the week."

There was a street light at the intersection of Patterson Avenue and Second Street, but none of the witnesses was positive as to whether or not it was burning at the time of the accident.

Mrs. Helen Bailey, a witness for the plaintiff, testified she was about a half a block away from the crossing at the time the plaintiff got hit. "I did not see the engine hit him. . . . I don't know whether it was car lights or what, . . . I could see the engine from half way up the block."

At the close of plaintiff's evidence, the defendant moved for judgment as of nonsuit. The motion was allowed and plaintiff appeals and assigns error.

*Jno. D. Slawter and Joe W. Johnson for plaintiff.*
*Womble, Carlisle, Martin & Sandridge for defendant.*

Denny, J. We think, if it be conceded the defendant was negligent in the operation of its engine, the plaintiff failed to use reasonable care for his own safety, and thereby contributed to his injury. *Coleman v. R. R.,* 153 N.C. 322, 69 S.E. 251; *Bailey v. R. R.,* 196 N.C. 515, 146 S.E. 135; *Tart v. R. R.,* 202 N.C. 52, 161 S.E. 720; *Rimmer v. R. R.,* 208 N.C. 198, 179 S.E. 753; *Bullock v. R. R.,* 212 N.C. 760, 194 S.E. 468.

"A railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the court." *Coleman v. R. R., supra.*

And while the plaintiff testified it was dark and he did not see any signs of a train, did not hear a bell or whistle, or see a light, he further testified that when he was about to cross the crossing, the cars were cranking up there and flashing on their lights, and the lights blinded him. He also testified he never saw the engine until after it hit him, but "I could see up the sidewalk to the west on Second Street when I was lying on the ground. . . . I could see south on Patterson."

The shifting engine came from the south and if the plaintiff could see to the south on Patterson Avenue after he was hit, and while lying on the ground, it is difficult to understand why he could not see in that direction before he attempted to cross the sidetrack, if he looked, unless he was, as he testified, blinded by the lights from automobiles at the time he attempted to cross the defendant's sidetrack. *Lee v. R. R.,* 180 N.C. 413, 105 S.E. 15.

In the last cited case, the plaintiff admitted he left a place of safety and walked a distance of some eight feet on to the southbound main line track, while he was enveloped in smoke from a northbound train, where he was hit by a southbound train. The court held the plaintiff was guilty of contributory negligence on his own evidence.

In the instant case it is well to note the plaintiff never testified he could not see the approaching engine. He simply stated he did not see it. And his witnesses who were at the scene of the accident testified with respect to light as follows: "There was a lot of light there. . . . There was plenty of light around there. . . . I don't know where the light was coming from, but there was plenty of light to see a person. I could see that it was a boy that was hit. . . . I could see the engine from half way up the block." Furthermore, all the testimony with respect to warnings and the headlight on the defendant's engine and the street light, was in the negative. The witnesses simply testified they did not remember seeing a headlight, or hearing a bell or a whistle, or whether or not the street light was burning. However, there is positive evidence from the plaintiff that he was blinded by lights from automobiles when he was "about to cross the crossing," but he testified that after he was hit he could see down Patterson Avenue, which was the direction from which the engine came. *Herman v. R. R.,* 197 N.C. 718, 150 S.E. 361. From the facts and circumstances disclosed by plaintiff's evidence, we think the judgment as of nonsuit should be upheld.

Affirmed.