### J. B. RAMEY v. SOUTHERN RAILWAY COMPANY.

(Filed 12 June 1964.)

**1. Railroads § 5—**

In this action to recover for a collision at a railroad crossing, evidence that the view of an approaching train was obstructed by a bank and vegetation, that it was the custom of the railroad to have a flagman present and have the whistle blow and a bell ring, and stop the train until the flagman waived it to proceed, and that on the occasion in question there was no flagman or sound of whistle or bell, *is held* sufficient to be submitted to the jury on the issue of the railroad company's negligence.

**2. Negligence § 26—**

Nonsuit for contributory negligence is proper when plaintiff's own evidence, considered in the light most favorable to him, induces this conclusion as the sole reasonable one that can be drawn from the evidence.

**3. Railroads § 5—**

A railroad grade crossing is in itself a warning of danger.

**4. Same—**

A motorist cognizant of the custom of the railroad to have a flagman at a grade crossing has the right to place some reliance upon the custom,

but is not entitled to rely entirely thereon and omit the exercise of all care for his own safety.

5. Same— **Evidence held to show contributory negligence as matter of law on part of motorist injured in railroad crossing accident.**

Evidence tending to show that the view of an approaching train was obscured until a motorist got to within 22 or 25 feet of the nearest rail of the grade crossing, that a flagman was ordinarily present at the crossing, that plaintiff motorist was cognizant of this custom and was familiar with the crossing, that the motorist failed to stop before entering the crossing and was struck by defendant's train, which stopped after the impact while still on the crossing, leaving plaintiff's automobile entirely on the hardsurface, *is held* to show contributory negligence on the part of plaintiff as a matter of law in relying entirely on the precautionary measures customarily taken by the railroad and failing to exercise any care for his own safety.

6. **Negligence § 26—**

No inflexible rule can be laid down as to whether the evidence discloses contributory negligence as a matter of law, but each case must be determined upon its own particular facts.

APPEAL by plaintiff from *Latham, S. J.,* 3 September 1963 Session of SURRY.

Civil action to recover damages for personal injuries and automobile damage resulting from a collision between plaintiff's automobile and defendant's engine at a grade crossing in Mt. Airy.

Defendant in its answer denies any negligence on its part, and as a further answer and defense conditionally pleads plaintiff's contributory negligence as a bar to recovery.

From a compulsory judgment of nonsuit entered at the close of plaintiff's evidence, he appeals.

*Elledge and Mast; Blalock and Swanson; Randolph and Clayton by Clyde C. Randolph, Jr., for plaintiff appellant.*

*W. T. Joyner; A. B. Carter; Womble, Carlyle, Sandridge & Rice by W. P. Sandridge, Jr., for defendant appellee.*

PARKER, J. The judgment of compulsory nonsuit must be sustained if plaintiff's evidence considered in the light most favorable to him fails to show any actionable negligence on defendant's part, or if his evidence considered in the same light affirmatively shows contributory negligence on his part so clearly that no other conclusion can be reasonably drawn therefrom. *Jenkins v. R. R.,* 258 N.C. 58, 127 S.E. 2d 778; *Carter v. R. R.,* 256 N.C. 545, 124 S.E. 2d 561; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

The only eye witness to the actual collision was plaintiff. His evidence, considered in the light most favorable to him, *Raper v. Mc-Crory-McLellan Corp.*, 259 N.C. 199, 130 S.E. 2d 281, shows:

North-South Street in Mt. Airy runs approximately in a north and south direction. The tracks of the Southern Railway run east and west, and cross this street at a grade crossing from northeast to southwest on a slight curve, according to plaintiff, and on a sharp curve, according to his witness B. J. Ledford. Plaintiff, at 7:30 p.m. on 11 September 1959, was driving his automobile north on this street and approaching this crossing at a speed of about 20 miles an hour. His right window was up; his left window was down. It was dark. This street is downhill in the direction he was approaching the crossing, until it is within about 100 feet from the crossing, where it levels off. Defendant's train was approaching the crossing going west.

Plaintiff had been familiar with this crossing for the last fifteen years. He had traveled over it seven or eight times a day for two or three years immediately prior to the collision in the instant case. During this time he had seen defendant's trains use this crossing 25 or 30 times.

A railway crossarm sign was erected at the crossing on the side of the railway tracks plaintiff was approaching, which plaintiff said he did not see. On the same side of the railway tracks, about 100 feet from the tracks, was a triangular, diamond-shaped sign bearing the words "Railroad Crossing Ahead," which is difficult to see because of trees. To the right of North-South Street, as plaintiff approached the crossing, was a bank covered with old field pines and undergrowth, which extends to within ten feet of the first rail of the railway tracks. The bushes on this bank were three to five feet high or higher. This bank was two feet high twelve or fifteen feet from the railway rail, as plaintiff approached it, and rose to a height of twelve or fifteen feet twenty feet from this rail.

B. J. Ledford, a witness for plaintiff, has lived in Mt. Airy 40 years. He was a member of the police force there for 10 years up to September 1959. He is thoroughly familiar with this crossing. He testified: "As to my knowledge as to the custom and usage for defendant Southern Railway, the train would stop as it came to the intersection. Based on my familiarity with the custom and usage by the defendant, the Southern Railway, the flagman, if there was no oncoming traffic, would motion the engine to come on through. * * * When the train was approaching the intersection, their habits were always to blow the whistle and ring a bell."

Plaintiff testified: "As I came around the curve I was traveling about 20 miles an hour. I changed the speed of my automobile as I approached the grade crossing. I removed my foot from the accelerator. As to how far from the crossing, traveling on this road, you can first see the crossing itself, the point where the tracks cross the road, I'll say around 30 feet. * * * I was traveling north on North-South Street coming down at a speed of 20 or 25 miles an hour which I reduced speed as I come down the slope there, as I started around the curve. I didn't observe no whistle blowing, no flagman or bell ringing, or nothing. All of a sudden I heard brakes on the train and that's where the collision happened. That's when I collided, when the train hit me. I was approximately 30 feet when I heard the brake on the train. My headlights were burning. * * * When I came to myself after the collision, they was *(sic)* putting me in the ambulance. * * * At other times I have used this crossing, there would be a flagman out there, a whistle blowing and a bell ringing. I have never seen this crossing in use by the railroad when there was not a flagman stationed there. * * * I never saw the train at all until after the wreck. I didn't stop before I went onto the crossing." Plaintiff testified on cross-examination: "The first time I became conscious of the train at all was when I heard the brakes of the train going on. That's right. That was about 30 feet from the crossing. * * * I remember applying my brakes before I hit the train. I skidded my wheels. I don't know how far I skidded." He testified on redirect examination: "I listened, looked, to see if there was a flagman out there at the crossing. I listened for a bell to ring, and a whistle to blow, and did not hear any; no flagman there. There was no flagman there. * * * I was half-way out on the railroad track when the train struck me." He testified on recross-examination: "I was on the track when the train hit me. I never saw the train. I said I did skid. The reason I skidded was that I heard the train shrieking, the brakes shrieking. * * * And the only thing I did until I heard the brakes of the train slow down was to take my foot off the accelerator. I reduced speed coming all the way down the hill taking my foot off. I didn't put on my brakes at all until I heard the brakes of the train go on."

Three or four hundred feet behind plaintiff's automobile at the time of the collision, and traveling in the same direction, was an automobile driven by B. J. Ledford. Between these two automobiles and traveling in the same direction was an automobile driven by a Mr. Venable, who was not a witness. Ledford testified in substance, except when quoted: He drove up to the crossing, radioed for an ambulance, and got out of his automobile. Plaintiff was in the street at the left front door of

his automobile on his hands and knees. He lifted him up, and took him and set him down on the edge of the road. Plaintiff's automobile was on the left-hand side of the shoulder of North-South Street just a few feet behind the cow catcher of the railway engine, and its left front door was open. "The debris was approximately right at the edge of the hard surface, right on the shoulder, his right front wheels. The debris was right on the track. I noticed skid marks from Mr. Ramey's vehicle back just a few feet. I don't remember exactly how many, where his wheels had skidded, and when he hit the train, it twisted his car around and brought him, the right side of it laying up against the train and the train entered onto the intersection and stopped at just about the edge of the hard surface on the other side. * * * The automobile was on the road. No part of the automobile was off the road." Ledford testified in part on cross-examination: "When I came to a stop and got out of the car just seconds after the wreck, the light was burning on the train. I didn't see the light on the train as I approached the accident. The front end of the engine was on the left side of the shoulder of the road setting right on the shoulder. The bell was ringing when I stopped the car and got out." In his opinion, it would be pretty hard 28 feet from the crossing to see a train east of the crossing for more than a short distance. The right front fender and wheel of plaintiff's automobile and the left front of the engine collided.

Considering plaintiff's evidence in the light most favorable to him, we are of opinion that his evidence makes out a *prima facie* case of actionable negligence on defendant's part. *Jenkins v. R. R., supra; Carter v. R. R., supra; Johnson v. R. R.,* 255 N.C. 386, 121 S.E. 2d 580.

The crucial question for decision is whether plaintiff's own evidence shows contributory negligence as a matter of law. The rule is firmly embedded in our adjective law to enter a judgment of nonsuit on the theory of contributory negligence when plaintiff's own evidence, considered in the light most favorable to him, shows negligence on his part proximately contributing to his injury, so clearly that no other conclusion can be reasonably drawn therefrom. *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137; *Bundy v. Powell, supra.* The plaintiff thus proves himself out of court. *Lincoln v. R. R.,* 207 N.C. 787, 178 S.E. 601. The very term "contributory negligence" implies that it need not be the sole cause of the injury. *Fulcher v. Lumber Co.,* 191 N.C. 408, 132 S.E. 9.

A railroad grade crossing is in itself a warning of danger. *Bennett v. R. R.,* 233 N.C. 212, 63 S.E. 2d 181; *Coleman v. R. R.,* 153 N.C. 322, 69 S.E. 251; 75 C.J.S., Railroads, § 768 a. Plaintiff had the right to place some reliance on the custom or usage of the defendant when

one of its trains was approaching this grade crossing, where a bank to his right partially obscured his view of its tracks, to have a flagman there and its whistle blowing and bell ringing, and to stop the train at the grade crossing until the flagman waved it to proceed, with which custom and usage he was familiar. *Johnson v. R. R., supra; Oldham v. R. R.,* 210 N.C. 642, 188 S.E. 106; *Southern Ry. Co. v. Whetzel,* 159 Va. 796, 167 S.E. 427; 75 C.J.S., Railroads, § 939; 44 Am. Jur., Railroads, §§ 561 and 562. However, this rule does not mean that plaintiff could rely entirely on a proper performance on the part of defendant of its custom and usage there, and omit the exercise of all ordinary care on his part for his own safety, because it was his legal duty to take such precautions for his own safety as an ordinarily prudent man would take under the same or similar circumstances. *Johnson v. R. R., supra; Parker v. R. R.,* 232 N.C. 472, 61 S.E. 2d 370; *McCrimmon v. Powell,* 221 N.C. 216, 19 S.E. 2d 880; *Miller v. R. R.,* 220 N.C. 562, 18 S.E. 2d 232; *Godwin v. R. R., supra;* 75 C.J.S., Railroads, §§ 939 and 763; 44 Am. Jur., Railroads, § 480, p. 719.

In *Johnson v. R. R., supra,* the Court said: "A traveler on a highway has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed. [Citing authority.] But the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when from a safe position such looking and listening will suffice to warn him of danger."

On plaintiff's right as he approached the crossing was a bank that ended ten feet from the nearest rail of the railway tracks. For a distance of twelve to fifteen feet from where it ended, the bank was two feet high with undergrowth on it three to five feet high or higher. Twenty-two to twenty-five feet from the nearest rail, as plaintiff approached it, a train's engine could be plainly seen, because it would be higher than a two-foot bank with undergrowth on it three to five feet high or higher. It would seem that farther back than twenty-two or twenty-five feet from the nearest rail of the tracks the railway engine could not be seen, as plaintiff approached the crossing. Plaintiff was thoroughly familiar with this crossing and its danger, because he had crossed it seven or eight times a day for the two or three years immediately prior to this occasion. With such knowledge he approached this crossing looking straight ahead, but neither to the left nor the right, to see if there was a flagman at the crossing and listening if he could hear the bell of a train ringing or its whistle blowing, and seeing no flagman and hearing no signals from a train, he continued to approach this crossing at such a speed that when he, about thirty feet

from the crossing, heard the brakes of the train, he could not stop his automobile but skidded onto the crossing and into the train's engine. He testified: "I never saw the train at all." The engine stopped on the crossing. If he had approached this crossing, which he well knew was a zone of danger, at such a speed that he could have stopped his automobile within twenty-two feet of the nearest rail of the tracks, from which distance *by merely looking to his right* he could have seen the approaching train's engine, he could easily have avoided the collision and his resulting injuries. What *Higgins, J.,* said for a unanimous Court in affirming a judgment of compulsory nonsuit in *Jenkins v. R. R., supra,* is apposite here: "The evidence does not even suggest the plaintiff stopped to look or listen, but apparently trusted to blind luck and ran into the train." Plaintiff's evidence, considered in the light most favorable to him, permits only one unescapable conclusion, and that is that he failed to exercise *any ordinary care* for his own safety, but *relied entirely* on the habit and custom of the defendant of having a flagman at the crossing and of ringing the bell and blowing the whistle of its engine when a train was proceeding to cross the crossing. He has proved himself out of court by his own evidence of legal contributory negligence on his part. On the facts here, this decision is controlled by the line of cases represented by *Jenkins v. R. R., supra; Carter v. R. R., supra; Bennett v. R. R., supra; Boyd v. R. R.,* 232 N.C. 171, 59 S.E. 2d 785; *Parker v. R. R., supra; Godwin v. R.. R., supra; McCrimmon v. Powell, supra; Miller v. R. R., supra; Pitt v. R. R.,* 203 N.C. 279, 166 S.E. 67; *Harrison v. R. R.,* 194 N.C. 656, 140 S.E. 598; *Coleman v. R. R., supra; Trull v. R. R.,* 151 N.C. 545, 66 S.E. 586.

*Northern Pacific R. Co. v. Freeman,* 174 U.S. 379, 43 L. Ed. 1014, is a case with facts somewhat similar to the instant case. In that case it is said in the syllabus: "Where a person approached a railway crossing well known to him, when a coming train was in full view, and he could have seen it while 40 feet distant from the track if he had used his senses, but did not look, or took the chance of crossing the track before the train reached him, and was killed, he was guilty of contributory negligence."

*Johnson v. R. R., supra,* is factually distinguishable. In that case Johnson stopped his pickup truck about 30 feet before reaching the railroad track and *looked in both directions* and listened.

No inflexible rule can be laid down as to what constitutes contributory negligence as a matter of law, as each case must be decided on its own facts. Plaintiff's own evidence clearly shows that he failed to take proper care and precaution for his own safety, and hence it must be declared that, under established rules of law, he is guilty of contribu-

tory negligence as a matter of law. The judgment of compulsory non-suit below is

Affirmed.