IN THE SUPREME COURT OF NORTH CAROLINA

No. 264A23

Filed 23 May 2025

DANIEL JONES

v.

J. KIM HATCHER INSURANCE AGENCIES, INC.; HXS HOLDINGS, INC.; GEOVERA SPECIALTY INSURANCE COMPANY; and GEOVERA ADVANTAGE INSURANCE SERVICES, INC.

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 290 N.C. App. 316 (2023), affirming in part and reversing in part an order entered on 23 February 2021 by Judge Phyllis M. Gorham in Superior Court, New Hanover County. On 26 June 2024, the Supreme Court allowed plaintiff's petition for discretionary review as to an additional issue pursuant to N.C.G.S. § 7A-31. Heard in the Supreme Court on 12 February 2025.

*The Armstrong Law Firm, P.A., by L. Lamar Armstrong III, for plaintiff-appellee.*

*McAngus Goudelock & Courie, PLLC, by Jeffrey B. Kuykendal, John T. Jeffries, and Jared M. Becker, for defendant-appellant.*

EARLS, Justice.

The question presented in this case is whether a person is contributorily negligent for signing a blank insurance application and trusting his or her agent to complete it carefully, no matter the circumstances. In other words, when a complaint discloses that someone signed a blank insurance application, must the complaint be

dismissed as a matter of law? According to the pleadings, Plaintiff Daniel Jones signed a blank application for a homeowner's insurance policy, relying on his agent, J. Kim Hatcher Insurance Agencies, Inc. (Hatcher), to do the rest. Jones trusted Hatcher's assurance that it would accurately fill out the application, based on their prior course of dealings and because Hatcher would earn a commission for the sale. But after Hurricane Florence destroyed Jones's home and belongings, Jones's insurer refused to cover his losses and instead canceled his policy, citing "material misrepresentations" in Jones's insurance application. Jones discovered that Hatcher had omitted any reference to the existence of the half-acre pond in front of his house and understated the size of his property by three acres when it completed his insurance application.

Jones brought an action against Hatcher alleging, among other things, that it was grossly negligent or at least negligent in how it handled Jones's application. Hatcher moved to dismiss the ordinary negligence claim under Civil Procedure Rule 12(b)(6) based on contributory negligence. *See* N.C.G.S. § 1A-1, Rule 12(b)(6) (2023). In essence, Hatcher contended that a person is always negligent for signing a blank legal document and trusting another to complete it carefully, regardless of the relationship between the parties or the context. The trial court granted Hatcher's motion on that basis, and the Court of Appeals reversed.

We agree with the Court of Appeals that dismissal of the complaint was not warranted here. Our precedent as well as common sense support that factual

circumstances do bear on whether it is reasonable to trust another person with a "blank check" and therefore whether it is contributorily negligent to do so. A reasonable person could conclude that Jones acted with ordinary prudence when he trusted Hatcher to carefully do as it promised, based on Hatcher and Jones's course of dealing and Hatcher's specific assurances. Thus, Jones's complaint does not, on its face, reveal facts that necessarily defeat his claim for ordinary negligence. Jones's claim for gross negligence is similarly undefeated, because contributory negligence does not bar a claim for gross negligence. *See Cullen v. Logan Devs., Inc.*, 386 N.C. 373, 382 (2024). The Court of Appeals' decision on the contributory negligence issue is affirmed.

Separately, Hatcher also moved to dismiss Jones's claim for punitive damages, which the trial court granted and the Court of Appeals affirmed. This was error. Under *Estate of Long v. Fowler*, 378 N.C. 138 (2021), notice pleading principles apply to claims for punitive damages. Here, Jones's complaint sufficiently alleged his general theory of punitive damages liability based on Hatcher's particular actions that were allegedly willful and wanton, giving Hatcher adequate notice of Jones's claims. *See* N.C.G.S. § 1A-1, Rule 9(k) (2023); N.C.G.S. § 1D-15(a) (2023). Jones therefore stated a claim for punitive damages sufficient to survive dismissal, and the Court of Appeals' decision to the contrary on this issue is reversed.

## I. Background

**A. Jones's Allegations**

At the Rule 12(b)(6) stage, a court must "take the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *New Hanover Cnty. Bd. of Educ. v. Stein*, 380 N.C. 94, 106–07 (2022). We therefore credit the following in Jones's complaint as true in reviewing the decision to grant Hatcher's Rule 12(b)(6) motion to dismiss. *See Cato Corp. v. Zurich Am. Ins. Co.*, 386 N.C. 667, 668 (2024).

Jones and his wife lived on an eight-acre property in Pender County containing his house, farmland, and a half-acre pond directly in front of his house. In 2014, Hatcher, a North Carolina corporation that procures and sells insurance throughout eastern North Carolina, began soliciting Jones to purchase insurance. Hatcher told Jones that he could obtain coverage from Nationwide equivalent to his existing N.C. Farm Bureau policy at a lower premium.[1] In the summer of 2016, Jones agreed that Hatcher could quote him a new homeowner's insurance policy. Jones asked Hatcher if he would also qualify for a farm insurance policy, informing Hatcher that he farmed some portion of his eight acres of land. Hatcher responded that he would not qualify and advised a homeowner's policy through Nationwide instead.

That August, Jones met with Hatcher to discuss the Nationwide policy. Hatcher provided him with the coverage limits and premium costs, and Jones signed the single-page application form. Hatcher did not ask Jones any questions regarding his property or the policy application, but merely instructed Jones to sign "a single[-

---

[1] Jones's complaint describes the actions of "Hatcher," the corporation, rather than any particular agent of Hatcher acting on its behalf.

]page application form." In lieu of questioning Jones, Hatcher inspected and photographed his home and property—including the half-acre pond directly in front of Jones's house.



After gathering the needed information, Hatcher applied for and obtained the Nationwide policy for Jones.

Jones remained with Nationwide until 2017, when he switched back to N.C. Farm Bureau for a few months. Hatcher continued to solicit Jones's business and, in August 2017, offered Jones a homeowner's insurance policy through GeoVera Specialty Insurance Company (GeoVera). Hatcher advised Jones that GeoVera's policy would provide the same coverage as his existing policy at a significantly lower premium. Jones agreed to apply for it through Hatcher.

Hatcher then used the same application procedure it had used to procure Jones a Nationwide policy a year earlier. Hatcher again did not ask Jones any questions about his home or property. Just as it had done before, Hatcher presented Jones with only "a single[-]page document with a signature line." Above the space for Jones's signature, preprinted text read: "I have read the above application and any attachments and declare that the information is true and complete." Hatcher advised that "all [Jones] needed to do was sign the application page and pay the first payment."

"Based on Hatcher's prior inspection, photographing and knowledge of [Jones]'s property," Jones believed Hatcher had all the necessary information to apply for the policy, and Jones "trusted that Hatcher would accurately reflect its knowledge on the application." Hatcher did not provide any documents aside from the third page of the blank application for Jones's review, and Jones complied with its instructions by signing the blank application.

A designated "producer" for Hatcher ultimately signed the application and

dated it for the same day as Jones's signature. A "producer" is an agent or broker licensed to sell, solicit, or negotiate insurance. N.C.G.S. § 58-33-10(7) (2023). GeoVera soon issued a homeowner's policy to Jones, which was effective from August 2017 to August 2018. Jones then renewed the policy in August 2018 without issue, to be effective until August 2019. A copy of the "policy renewal declarations," attached to Jones's amended complaint, included a "property detail page" reciting several details about Jones's property but not mentioning the pond or the acreage.

In September 2018, Hurricane Florence tore through eastern North Carolina and substantially damaged Jones's home and property. It blew shingles off the roof, damaged every room in the home, and destroyed most of Jones's personal belongings. Jones and his wife could no longer live inside their home and were forced to rent and relocate to a camper. Jones filed a claim with GeoVera, who initially advised Jones that his losses were covered. But a month later, GeoVera informed Jones that it was canceling his policy, because Jones's application did not mention his pond or accurately describe his property acreage and thus contained "material misrepresentations." GeoVera contended that, had it known these facts, it would not have issued Jones the policy. It follows that Hatcher would not have received a commission from selling the policy to Jones, absent its misrepresentations in the application.

**B. Procedural Posture**

Jones sued Hatcher, a surplus line broker HXS, and GeoVera in New Hanover

County Superior Court.[2]

Against Hatcher, in particular, Jones brought tort claims for negligence, gross negligence, and punitive damages. His amended complaint alleged that Hatcher acted negligently in how it handled Jones's application, including by providing answers that it knew were incorrect. Hatcher knew or should have known that providing such false answers could substantially harm Jones should GeoVera seek to void the policy instead of paying out a claim. This conduct, he alleged, was "[i]n conscious and intentional disregard of and indifference to [Jones's] rights." Hatcher's knowing misrepresentations, from which it derived a financial benefit at a substantial risk to Jones's rights, constituted willful and wanton misconduct entitling him to punitive damages. Hatcher answered and moved to dismiss under Rule 12(b)(6).

The trial court held a hearing on Hatcher's (and other defendants') motions to dismiss and dismissed all of Jones's claims except for his breach of contract claim against GeoVera. Jones then voluntarily dismissed that claim with prejudice on 15 September 2022. Twelve days later, he filed notice of appeal from the trial court's dismissal order.

## C. The Court of Appeals Decision

The Court of Appeals largely affirmed the trial court's dismissal of all of Jones's

---

[2] Jones's claims against GeoVera and HXS, a surplus line broker, were dismissed below and are not at issue in this appeal.

claims. *Jones v. J. Kim Hatcher Ins. Agencies, Inc.*, 290 N.C. App. 316, 319 (2023). That included his claim for punitive damages against Hatcher. On that issue, the Court of Appeals reasoned first that Jones erred by not "referenc[ing] . . . the *conduct* of Hatcher that he claims to be an aggravating factor." *Id.* at 335 (emphasis added). Second, Jones failed to allege that "an officer, director, or manager of Hatcher was responsible for the negligence" giving rise to punitive damages, it concluded. *Id.* at 336.

The Court of Appeals reversed, though, on the dismissal of the ordinary negligence claim against Hatcher. *Id.* at 319. Because Jones alleged that Hatcher acted as his agent, that he provided Hatcher with accurate information about his property, that Hatcher assured him the policy would offer the same coverage, that Hatcher assured Jones that he need only sign the signature page of the multipage application and let Hatcher do the rest, and that Hatcher did not in fact provide the correct information, leading to the denial of Jones's insurance claim, Jones sufficiently alleged a negligence claim. *Id.* at 332–33. The court declined to find that Jones was contributorily negligent as a matter of law for signing the blank application form. *Id.* at 334.

The dissent would have affirmed the trial court's dismissal of this claim against Hatcher because, in its view, his complaint disclosed his contributory negligence. *Id.* at 338 (Collins, J., concurring in result in part and dissenting in part). The dissent reasoned that by signing the blank application, Jones represented that

the information was true and accurate. *Id.* Jones did not allege that Hatcher did or said anything to mislead him or put him off his guard, thus his failure to act carefully barred his claim, the dissent concluded. *Id.*

Hatcher appealed the decision to this Court based on the dissent's contrary view of the contributory negligence issue. *See* N.C.G.S. § 7A-30(2) (2023). Separately, Jones filed a petition for discretionary review. On 26 June 2024, we allowed Jones's petition on whether the Court of Appeals erred in its analysis of his punitive damages claim.

## II.    Analysis

### A. Standard of Review

Ours is a "system of notice pleading afford[ing] a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." *Button v. Level Four Orthotics & Prosthetics*, 380 N.C. 459, 467 (2022) (quoting *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 491 (1992)). A complaint should survive a Rule 12(b)(6) motion "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103 (1970) (emphasis omitted). Thus, granting a motion to dismiss is only appropriate (1) when no law supports plaintiff's claim; (2) when the complaint lacks allegations essential to make a good claim; or (3) when an allegation "necessarily defeats" the claim as a matter of law. *Cato Corp.*, 386 N.C. at 672 (quoting *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986)).

"To determine whether a Rule 12(b)(6) motion was properly granted, this Court examines whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Cohane v. Home Missioners of Am.*, 387 N.C. 1, 7 (2025) (cleaned up). We review de novo the Court of Appeals' errors of law. N.C. R. App. P. 16(a); *New Hanover Cnty. Bd. of Educ.*, 380 N.C. at 106.

## B. Contributory Negligence

For appeals based on a dissent in the Court of Appeals, our review is limited to the scope of the issues specifically set out in the dissent and argued for by the parties. *Cryan v. Nat'l Council of YMCAs of U.S.*, 384 N.C. 569, 574 (2023); N.C. R. App. P. 16(b) (amended 2025). Here that issue is whether Jones's complaint disclosed his contributory negligence on its face, sufficient to defeat a claim for ordinary negligence against Hatcher. *See Sorrells v. M.Y.B. Hosp. Ventures*, 332 N.C. 645, 648 (1992) ("[A] plaintiff's contributory negligence is a bar to recovery from a defendant who commits an act of ordinary negligence.").

To establish contributory negligence as an affirmative defense, a defendant must prove that the "plaintiff could have avoided injury by exercising reasonable care." *Cullen*, 386 N.C. at 377. Whether a plaintiff exercised reasonable care, in turn, depends on whether he "conform[ed] to an *objective* standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Id.* (quoting *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673 (1980)).

"[S]ince the standard of reasonable care should ordinarily be applied by the jury under appropriate instructions from the court," contributory negligence is generally an issue for the jury. *Ragland v. Moore*, 299 N.C. 360, 363 (1980).

At the pleading stage, then, dismissal based on contributory negligence is proper only if the complaint demonstrates that the plaintiff's own negligence proximately contributed to his injury "so clearly that no other conclusion can be reasonably drawn therefrom." *Ramey v. S. Ry. Co.*, 262 N.C. 230, 234 (1964); *see also Davis v. Hulsing Enters., LLC*, 370 N.C. 455, 458 (2018). Put another way, disposing of the claim before trial is only appropriate where the plaintiff was "contributorily negligent as a matter of law." *E.g.*, *Ragland*, 299 N.C. at 368 (applying this standard at summary judgment). The face of the plaintiff's complaint must make it obvious that he was contributorily negligent. If a plaintiff sufficiently alleges gross negligence, any contributory negligence by the plaintiff is not a barrier to relief. *Cullen*, 386 N.C. at 382.

In general, everyone who can read a document has a duty to do so when signing it. *Mills v. Lynch*, 259 N.C. 359, 362 (1963). Thus material misrepresentations in an insured's application for insurance, signed by the insured, can be grounds to later void the policy. For example, in *Inman v. Sovereign Camp of the Woodmen of the World*, 211 N.C. 179 (1937), we held that an insurance company had no duty to honor a life insurance policy where the policyholder signed an application containing material misrepresentations. *Id.* at 180, 182. There, an insurance agent helped a war

veteran to complete an application for life insurance. *Id.* at 180. The agent questioned the veteran and wrote down the veteran's answers on the application before having the veteran sign it. *Id.* at 180–81. The veteran did not read the completed application before he signed it, nor did the agent say anything to induce him not to do so. *Id.* at 181–82. Had the veteran read the completed application, he would have seen that the application answers misrepresented his background: They wrongly indicated that he had never drawn a pension, had not been under hospital observation, had not suffered a bodily infirmity, and had not recently been attended by a physician. *Id.* The veteran had in fact experienced each of these, as he had shared with the agent. *Id.* at 180. But because the policy was issued contingent on truthful responses to the life insurance application, and because the veteran had signed the application containing material inaccuracies, we affirmed dismissal of the contract action to recover on the policy. *Id.* at 182.

Similar facts were present in *Thomas-Yelverton Co. v. State Capital Life Insurance Co.*, 238 N.C. 278 (1953). There, a man procured a life insurance policy after concealing that he had been diagnosed with a serious stomach ulcer and had been repeatedly denied for insurance coverage. *Id.* at 279–80. Apparently, his health information was relayed to the insurance agent, and the agent responded that he nevertheless could help the man procure a policy. *Id.* at 280. The man ultimately signed the application, which falsely represented that he had no stomach issues and had never been denied for insurance. *Id.* at 279–80, 283. After the man's death, the

company denied liability due to the man's substantial misrepresentations on his application. *Id.* at 279. We affirmed the judgment for the insurance company barring recovery on the policy: "[W]hen the insured signed the application he knew the agent had written the answers to the questions contained in it; and by signing it in the form submitted, he represented that the answers were true." *Id.* at 283.

These contract law cases follow common-sense intuitions. When an insured could review the relevant documents to correct any errors, his failure to do so is of his own making. False, material statements on the application the insured signed can be grounds for the insurance company not to honor its obligations.

Here, though, Jones's claims are of a different nature. His is not a contract action to recover on the policy, but an action against his insurance agent directly for the agent's negligence in procuring the policy. Our most analogous precedent is *Elam v. Smithdeal Realty & Insurance Co.*, 182 N.C. 599 (1921). There, the insured asked an agent to secure car insurance for losses from "fire or collision or other kind of accident." *Id.* at 601. The agent procured a policy and delivered the policy documents to the "proprietor of the garage where [the insured's] car was kept." *Id.* at 603. The proprietor placed the documents in his safe, beyond the insured's access. *Id.* at 601. While the documents were in the safe, the insured's car was in a "near accident" but sustained no "pecuniary damage." *Id.* The agent advised the insured that, had his car been damaged, his policy would have covered it. *Id.* On another occasion and in the insured's presence, the agent told a different client that the insured's policy covered

collisions. *Id.* at 601–02. Later, when the insured's car was damaged in a collision, he discovered that his losses were not covered because the agent secured the wrong type of coverage. *Id.* at 602. He then sued the agent. *Id.*

Had the insured read the policy, he would have learned that it lacked the coverage he had requested. *Id.* at 603. Yet this Court reversed the trial court's judgment of nonsuit in his claim against the agent. *Id.* at 604. We acknowledged that the insured had a duty to read the "formal contract affecting his pecuniary interest" and that knowledge of its contents would be imputed to him if he signed or accepted the contract. *Id.* at 603. But that general duty to read "is subject to the qualification that nothing has been said or done to mislead him or to put a man of reasonable business prudence off his guard in the matter." *Id.* Even though the insured could not recover on the policy because it did not cover his damages, we allowed his suit against the agent to continue to a jury trial on whether he *did* breach his duty to read, in light of the agent's specific assurances that his policy covered collision damages. *Id.* at 604.[3]

---

[3] The partial dissent appears to suggest in a footnote that *Elam v. Smithdeal Realty & Insurance Co.*, 182 N.C. 599 (1921), is distinguishable in part because the claim there sounded in contract, not tort. But in our view, *Elam* made clear that the same contributory-negligence principles would apply whether the plaintiff sued his agent in tort or contract for the agent's negligence. *See id.* at 603.

That was so, this Court explained, because the plaintiff brought a particular kind of claim for "breach of contract of agency." *Id.* at 604. The insured sued the agent for "negligent failure to perform a duty he had undertaken and assumed as agent." *Id.* at 602. That failure gave the plaintiff two paths for recovery—one in contract, for breaching the duty of faithfulness imposed by the agreement; the other in tort, for breaching the same duty imposed by law. *Id.* at 604. Either way, the theory of harm was the same: The agent failed to act with reasonable care after agreeing to secure coverage, and "his negligent default" caused

As *Elam* shows, whether an individual was reasonably put off his guard, and thus was not contributorily negligent, is fact specific. The interactions between the insured and the agent before and after the policy was issued are relevant to the determination of whether it was reasonable for the insured to trust the agent enough to not double-check the agent's work.

Here, taking the factual inferences in Jones's favor and assuming his allegations are true, Hatcher's specific assurances and the course of prior dealings between the two of them could have put Jones "off his guard" and thus made it reasonable that Jones trusted Hatcher to complete the application accurately. *Elam*, 182 N.C. at 603. Hatcher told Jones that "all [he] needed to do was sign the application page and pay the first payment" to have homeowner's insurance that provided him the same coverage as his previous policy. It then provided only the third, signature page of a blank application for him to sign. Hatcher had previously applied for and secured Jones a homeowner's insurance policy using this same procedure.

---

the plaintiff's loss. *Id*. at 602. And either way, common contributory-negligence principles applied. *See id*. at 603. The injured party—whether suing for a "breach of contract which is definite and entire or tort committed"—must "do what reasonable care and business prudence requires to minimize the loss." *Id*. That imports a basic duty to read a document that bears on one's financial interests when accepting or signing it—unless the plaintiff is misled or lulled "off his guard." *Id*.

Thus *Elam* did not vary its rule based on a claim's label. *See id*. And for the plaintiff in *Elam*, the nature of his claim did not alter our conclusion: It was for the jury to decide whether his failure to secure coverage came from his own lapse in not reading the policy. *See id*. at 603–04. This conclusion supports our determination here, that dismissal of Jones's ordinary negligence claim is not appropriate at this Rule 12(b)(6) stage. And it is distinct from *Elam*'s acknowledgement that, in a contract action, the effect of a plaintiff's negligence is only to reduce an award of damages, not to defeat the claim entirely. *See id*. at 604.

Jones knew Hatcher had inspected and photographed Jones's property and used the results of its inspection to complete the earlier application, in lieu of asking Jones specific questions. He relied on that previous experience and instructions by Hatcher, his agent, when he signed the blank application a second time. Jones also knew Hatcher stood to make commission from providing Jones the service of selling and procuring an appropriate insurance policy—so it, too, had an incentive to take care. These allegations of a prior course of conduct and Hatcher's specific assurances are sufficient to allege that Jones may have been reasonably put off his guard, and therefore that Jones was not contributorily negligent.

Our conclusion that this pleading survives dismissal at this stage is consistent with broader tort law principles. Tort law attaches civil liability to "socially unreasonable" behavior that interferes with the interests of others. W. Page Keeton et al., 1 *Prosser and Keeton on the Law of Torts* § 1, at 6 (5th ed. 1984). What is "socially unreasonable" in turn depends on "the point of view of the individual" and "the point of view of the community as a whole." *Id.* at 6–7. Community members may reasonably expect that, where an agent stands to earn commission for performing a service for a customer, the agent can be trusted to perform that service with due care. After all, if a customer can never trust their agent, what is the point of hiring the agent to begin with? Requiring customers to double-check their agent's homework, no matter the circumstances and as a matter of law, is inconsistent with reasonable social expectations. Simply put, this is not the "rare" case where negligence is so

obvious that the court should decide it as a matter of law, because "[w]hat is reasonable under the[se] circumstances is . . . a question on which well-informed people of good faith can disagree." Mark W. Morris, *North Carolina Law of Torts* § 19.20[1][c][iv] (2024). Where, as shown by the pleadings here, "reasonable [people] could reach different conclusions" as to whether the parties acted with due care, the pleadings survive the dismissal motion. *Page v. Sloan*, 281 N.C. 697, 708 (1972).

In sum, we decline Hatcher's invitation to adopt a tort rule detached from common-sense notions of whether a person may reasonably trust his or her agent to carefully complete a document the person signs. We agree with the Court of Appeals that Jones's complaint does not show that he contributed to his injury "so clearly that no other conclusion can be reasonably drawn therefrom." *Ramey*, 262 N.C. at 234. Jones's claim for ordinary negligence was therefore improperly dismissed.

## C. Punitive Damages

We also allowed Jones's petition for discretionary review to address a second issue: whether the Court of Appeals erred by misapplying the pleading standard for punitive damages when it affirmed dismissal of Jones's claim. We conclude that the Court of Appeals erred, and we reverse this part of its decision.

In addition to bringing an ordinary negligence claim, Jones brought a claim for gross negligence and separately alleged that punitive damages should be awarded based on Hatcher's allegedly willful or wanton conduct. Gross negligence is a greater degree of negligence than ordinary negligence. *Cullen*, 386 N.C. at 382; *Est. of Savino*

*v. Charlotte-Mecklenburg Hosp. Auth.*, 375 N.C. 288, 300 (2020). Willful or wanton conduct for punitive damages purposes is a higher or greater degree of negligence than gross negligence. *Est. of Long v. Fowler*, 378 N.C. 138, 154 (2021); N.C.G.S. § 1D-5(7) (2023) (defining "[w]illful or wanton conduct" as "more than gross negligence," and specifically as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm"). Thus, when a court concludes that a complaint adequately states a claim for willful or wanton conduct, a separate inquiry into whether it states a claim for gross negligence is unnecessary. *Fowler*, 378 N.C. at 154. Contributory negligence is not grounds to dismiss the claim for gross negligence or the demand for punitive damages. *See Cullen*, 386 N.C. at 382.

Because we conclude that Jones sufficiently alleged facts to support punitive damages based on willful or wanton conduct, Jones's claim for gross negligence likewise survives and necessarily overcomes Hatcher's allegation of contributory negligence. *See Fowler*, 378 N.C. at 154; *Cullen*, 386 N.C. at 382. Still, we address contributory negligence in Section II.B and punitive damages in this Section because both are properly before us based on the dissent below and our exercise of discretionary review. Further, should evidence obtained after discovery indicate that a jury could find Hatcher only ordinarily negligent, the issue of whether Jones was contributorily negligent as a matter of law would again be in dispute. Thus, both the contributory negligence issue and the punitive damages issue are ripe for our review.

Turning to the substance of Jones's allegations, "[n]otice pleading principles are applicable to claims for punitive damages." *Fowler*, 378 N.C. at 151. For that reason, a "complaint need not lay out the detailed and specific facts giving rise to punitive damages" liability. *Id.* at 152 (cleaned up). Instead, a plaintiff need only allege "sufficient information . . . from which defendant can take notice and be apprised of the events and transactions which produce the claim to enable him to understand the nature of it and the basis for it." *Id.* at 151 (cleaned up).

These notice pleading principles apply to the specific pleading requirements for a demand for punitive damages. *Id.* Section 1D-15(a) provides that punitive damages can be awarded only if a defendant is liable for compensatory damages and engaged in an "aggravating factor" related to the same injury for which compensatory damages were awarded. One such aggravating factor is "[w]illful or wanton conduct," N.C.G.S. § 1D-15(a), defined by N.C.G.S. § 1D-5(7) as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." Our Rules of Civil Procedure clarify that only the aggravating factor must be "averred with particularity." N.C.G.S. § 1A-1, Rule 9(k). Otherwise, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." N.C.G.S. § 1A-1, Rule 9(b) (2023); *cf. Est. of Savino*, 375 N.C. at 297–99 (concluding that notice pleading principles apply to the specific pleading requirements of medical negligence).

Jones's complaint satisfied this standard. He alleged that Hatcher, while acting as his agent to procure him insurance coverage, knowingly misrepresented basic information about Jones's property. It omitted the existence of the half-acre pond immediately in front of Jones's house, which would have been apparent to any person stepping foot on Jones's property, as the photo incorporated in the complaint showed. And it understated the size of Jones's property, even though Jones had specifically asked Hatcher for insurance for his "roughly 8 acres of land" during a previous deal, Hatcher had inspected the property, and the property's size was a matter of public record. After inducing Jones to apply for a GeoVera policy by promising the same coverage at a substantially lower premium, Hatcher induced GeoVera to issue the policy and thereby realized a financial gain. Given these allegations, as well as the unusually high risk of a substantial claim in this hurricane-vulnerable part of the state and the significant harm to Jones should Hatcher fail to procure him the promised insurance coverage, Jones sufficiently alleged that Hatcher acted with a state of mind of "conscious and intentional disregard of and indifference to the rights and safety of others which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C.G.S. § 1D-5(7). Thus Jones's allegations state a general theory of punitive damages liability for the "willful or wanton conduct" aggravating factor sufficient to give Hatcher notice of his claims. *See Fowler*, 378 N.C. at 154; N.C.G.S. § 1A-1, Rule 9(k). No more is required to make a demand for punitive damages at the pleading stage.

The Court of Appeals further affirmed dismissal of Jones's demand for punitive damages because Jones failed to allege that "any officer, director, or manager of Hatcher . . . participated in or condoned" the conduct giving rise to punitive damages. *Jones*, 290 N.C. App. at 336. It relied on N.C.G.S. § 1D-15(c) (2023), which bars awards of punitive damages "solely on the basis of vicarious liability for the acts or omissions of another."

Chapter 1D of the General Statutes modified the common law to provide a statutory scheme "governing the standards and procedures for awarding punitive damages in this state." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 166–67 (2004). It provides that "a plaintiff must prove certain aggravating factors to be entitled to an award of punitive damages," *id.* at 167 (citing N.C.G.S. § 1D-15(a)), and it guides the trier of fact through the evidence it may consider in making such an award, *id.* (citing N.C.G.S. § 1D-35). Under that statute, punitive damages "may be awarded" against a corporation "only if . . . the officers, directors, or managers of the corporation participated in or condoned" the qualifying tortious conduct. N.C.G.S. § 1D-15(c).

While this statutory scheme provides certain limits on the "award" of punitive damages, it does not use the words "pled" or "plead" or "pleading." A different statutory scheme governs punitive damages pleading requirements: Civil Procedure Rule 9. *See* N.C.G.S. § 1A-1, Rule 9 (2023) ("Pleading special matters."). That rule requires that the aggravating factor for such demands be "averred with particularity," and that the "amount of damages shall be pled in accordance with Rule

8." *Id.* Thus Rule 9 incorporates by reference certain of Chapter 1D's requirements, since the latter identifies and defines the aggravating factors referenced in the pleading rule. Rule 9 does not, however, incorporate by reference N.C.G.S. § 1D-15(c)'s requirements. "We assume that when the General Assembly acts, it does so in accordance with other statutory provisions and rules, including the North Carolina Rules of Civil Procedure," so we must construe Rule 9's special pleading requirements in harmony with Chapter 1D's other provisions. *Rhyne*, 358 N.C. at 190. That Rule 9(k) expressly incorporates some of Chapter 1D's requirements, but not others, indicates that requirements not mentioned in Rule 9 are not part of the special pleading standard for punitive damages. As a matter of statutory interpretation, only the aggravating factor, and not the details of the allegedly tortious corporate agent, must be "averred with particularity."

The operative issue at the Rule 12(b)(6) stage, then, is whether Jones "is barred *as a matter of law* from asserting a claim for punitive damages against defendant in [its] capacity as" a corporate defendant. *Harrell v. Bowen*, 362 N.C. 142, 144 (2008). Traditional notice pleading principles apply. *See Fowler*, 378 N.C. at 151. A plaintiff must only allege facts sufficient to infer that an officer, manager, or director with authority to bind the corporation engaged in the aggravated conduct. *See* N.C.G.S. § 1D-15(c).

At this stage, allegations show Jones did just that. Jones alleged that Hatcher's conduct was engaged in "through [its] authorized employees and agents who were

acting within the course and scope of their employment and authority." From this pleading, viewed in the light most favorable to Jones, it can be inferred that the agent acting on behalf of Hatcher had the authority to bind the corporation as an officer, manager, or director. Jones incorporated into his complaint a copy of the signature page that he and Hatcher's agent signed, which identified Hatcher's signatory as a "producer" for Hatcher and gave Hatcher notice as to which of its agents was involved in the dispute. These allegations give Hatcher notice of the events giving rise to its possible liability for punitive damages and are therefore sufficient to make such a demand at the pleadings stage. The Court of Appeals' contrary holding is reversed.

## III.    Conclusion

Jones's claims do not present one of those rare cases where contributory negligence is apparent on the face of a plaintiff's complaint as a matter of law. Whether Jones was reasonably put "off his guard" such that he did not violate his general duty to read depends on facts and circumstances as yet to be developed in discovery. His complaint further states a demand for punitive damages liability in any event. For the foregoing reasons, the decision of the Court of Appeals is affirmed in part and reversed in part.

AFFIRMED IN PART AND REVERSED IN PART.

Justice ALLEN concurring in part and dissenting in part.

I agree with the majority that plaintiff Daniel Jones sufficiently alleged a claim for punitive damages against defendant J. Kim Hatcher Insurance Agencies (Hatcher). Try as I might, however, I cannot accept its rationale for holding that plaintiff was not contributorily negligent as a matter of law.

"With certain exceptions, [the defense of] contributory negligence will bar a plaintiff's negligence claim if the defendant shows that the plaintiff could have avoided injury by exercising reasonable care for the plaintiff's own safety." *Cullen v. Logan Devs., Inc.*, 386 N.C. 373, 377 (2024). Although ordinarily a jury must decide whether a plaintiff was contributorily negligent, a court may dismiss a negligence claim if the plaintiff's own factual allegations "show[ ] negligence on [the plaintiff's] part . . . so clearly that no other conclusion can be reasonably drawn." *Ramey v. S. Ry. Co.*, 262 N.C. 230, 234 (1964).

As the majority acknowledges, the law imposes a general duty on individuals to read documents before signing them. *See, e.g.*, *Mills v. Lynch*, 259 N.C. 359, 362 (1963) ("The duty to read an instrument or to have it read before signing it is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity." (cleaned up)). There are good reasons for this duty. With respect to contracts, for example, "[t]he thought is that no one could rely on a signed document if the other

party could avoid the transaction by not reading or not understanding the [document]." Joseph M. Perillo, *Calamari and Perillo on Contracts* § 9.41 (6th ed. 2009).

In this case, Hatcher argues that plaintiff's failure to read his 2017 application for homeowner's insurance amounted to contributory negligence. Plaintiff admits in his amended complaint that he signed the signature page of his 2017 application without first reading the application. Indeed, according to the amended complaint, "[t]he signature page did not include the rest of the application, any factual questions for [plaintiff] to answer regarding [plaintiff's] home or property, or any answers to such questions." Moreover, Hatcher "did not ask [plaintiff] any of the application questions relating to [plaintiff's] home or property." The following statement appeared on the signature page just above where plaintiff signed his name: "I have read the above application and any attachments and declare that the information is true and complete."

The majority does not deny that the factual allegations described above would constitute contributory negligence as a matter of law if they told the whole story of plaintiff's dealings with Hatcher. Of course, those allegations do not tell the whole story, or this would be a much simpler case. The amended complaint further alleges that Hatcher assisted plaintiff in obtaining a separate homeowner's insurance policy in 2016. In the majority's view, Hatcher's "specific assurances and the course of prior dealings between [plaintiff and Hatcher] could have put [plaintiff] 'off his guard' and

thus made it reasonable that [plaintiff] trusted Hatcher to complete the [2017] application accurately."

The problem with the majority's argument is that plaintiff also exhibited negligence in his 2016 interactions with Hatcher. The amended complaint alleges that the two held a "brief meeting" during which Hatcher outlined the 2016 policy's coverage limits and premiums. Although it inspected and took photographs of plaintiff's property, Hatcher "did not ask [plaintiff] any of the application questions or any other questions regarding the details of [plaintiff's] home or property." Nor did plaintiff "personally fill out the application." Rather, as with the 2017 application, Hatcher merely provided plaintiff with a "single page application form" to sign. In short, the amended complaint alleges that in 2016 and again in 2017 plaintiff signed an insurance application that he did not see—much less read—prepared by an agent who asked him no questions and to whom he furnished no answers.

Negligence plus negligence does not equal reasonable care. In circumstances such as these, a plaintiff should not be able to overcome the defense of contributory negligence by alleging that he engaged in similarly negligent conduct on a previous occasion. I therefore agree with the dissenting judge in the Court of Appeals that "[p]laintiff's conduct, or lack thereof, as alleged in his amended complaint constituted contributory negligence as a matter of law." *Jones v. J. Kim Hatcher Ins. Agencies, Inc.*, 290 N.C. App. 316, 338 (2023) (Collins, J., concurring in result in part and dissenting in part).

The majority relies heavily on *Elam v. Smithdeal Realty & Ins. Co.*, 182 N.C. 599 (1921). There the plaintiff purchased automobile insurance from the defendant insurance agent, who repeatedly assured him that the policy included collision coverage. *Elam*, 182 N.C. at 601. In reality, the policy provided no such coverage, a fact the plaintiff would have grasped if he had read the policy. *Id.* at 603. The plaintiff did not have ready access to the policy, however, because the agent left it with the proprietor of the garage where the plaintiff kept his car. *Id.* at 601. The plaintiff's car was damaged a few days later in an automobile accident. *Id.* After learning that his insurance policy did not cover collisions, the plaintiff sued his insurance agent. *Id.* At the close of the plaintiff's evidence, the trial court granted the insurance agent's motion to end the case. *Id.* This Court reversed, holding that the issue of the plaintiff's own negligence in not reading the policy should have gone to the jury.[1] *Id.* at 603–04.

I think that *Elam* does little to bolster the majority's position. The contributory negligence question in that case was plainly much closer than the one here. The automobile accident in *Elam* occurred less than a week after the agent notified the plaintiff that he had left the policy with the garage proprietor. *Id.* at 601. It is not apparent that the plaintiff acted unreasonably as a matter of law by failing to retrieve

---

[1] Notably, the *Elam* plaintiff did *not* sue his insurance agent for negligence; he sued "for breach of contract of agency." *Elam*, 182 N.C. at 604. In explaining why we were reversing the trial court, this Court remarked that, although contributory negligence could defeat negligence claims, it was not a complete defense to the plaintiff's claim for breach of contract. *Id.* Instead, it was merely a factor for the jury to consider in deciding what damages to award the plaintiff, if he proved his contract claim. *Id.*

the policy and read it during that brief period. In contrast, more than a year passed between plaintiff's signing of the 2017 insurance application and the arrival of Hurricane Florence. Plaintiff thus had over twelve months to obtain and review his application. Had he done so, he would have discovered that it contained materially incorrect information.

The majority is correct in construing *Elam* to say that the duty to read is not absolute. It is "subject to the qualification that nothing has been said or done to mislead [the plaintiff] or to put a man of reasonable business prudence off his guard in the matter." *Id.* at 603. Unlike the majority, I do not see how this case fits into that exception. If anything, Hatcher's reluctance to share the completed 2016 and 2017 applications with plaintiff should have raised plaintiff's suspicions, not put him off his guard. Nonetheless, I can imagine scenarios in which plaintiff's failure to read his 2017 application might be regarded as reasonable. For instance, if plaintiff had reviewed the 2016 application and found it to be accurate, he could plausibly argue that he acted reasonably in trusting Hatcher to complete the 2017 application. No such argument is available, though, based on the facts alleged in the amended complaint.

The majority offers the following additional justification for refusing to classify plaintiff's conduct as contributory negligence: "Community members may reasonably expect that, where an agent stands to earn commission for performing a service for a customer, the agent can be trusted to perform that service with due care."

I see two issues with the majority's statement. First, taken at face value, it completely nullifies the duty to read insurance and other contracts procured by agents who work on commission. Second, the statement ignores the obvious financial incentive—commissions—that such agents have to sell products to customers regardless of whether the products meet the customers' needs. The majority seems momentarily to have forgotten that the amended complaint in this very case alleges that the prospect of a commission motivated an agent to procure a policy that ultimately proved worthless to the customer.

The facts alleged in the amended complaint show that the failure by plaintiff to examine his 2017 homeowner's insurance application amounted to contributory negligence. Accordingly, I respectfully dissent from the majority's conclusion that plaintiff may proceed with his negligence claim against Hatcher.